**REVISED**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 96-60509

_____

BETTY FAYE PRICE,

Plaintiff-Appellant,

versus

MARATHON CHEESE CORP.,

Defendant-Appellee.

_____

Appeal from the United States District Court
For the Northern District of Mississippi

_____

July 31, 1997

Before WIENER and PARKER, Circuit Judges, and LITTLE[*], District
Judge.

WIENER, Circuit Judge:

In this employment discrimination case, Plaintiff-Appellant
Betty Price appeals the district court's grant of Defendant-
Appellee Marathon Cheese Corporation's motion for judgment as a
matter of law, concluding that she failed to establish a claim

---

[*]Chief U.S. District Judge of the Western District of
Louisiana, sitting by designation.

under the Family and Medical Leave Act[2] (FMLA), the Age Discrimination in Employment Act[3] (ADEA), or the Americans with Disabilities Act[4] (ADA).  In our de novo review we find that Price failed to adduce sufficient evidence to allow a reasonable jury to find that she was a victim of actionable employment discrimination under any of those Acts.  Accordingly, we affirm.

I

FACTS AND PROCEEDINGS

Price was employed by Marathon for twenty-three years.  She was fired on November 7, 1994, by Marathon's plant manager, Tim Trace, at the age of forty-nine.  Although some of the circumstances surrounding her termination are in dispute, in the end there is insufficient evidence supporting Price's position on disputed points to require jury resolution.

In August 1994, Dr. Dwight Johnson diagnosed Price with carpal tunnel syndrome and prescribed conservative treatment.  Price contends that shortly thereafter she told Trace about her condition and that he inquired as to when she planned to have surgery.  Trace maintains that he was never specifically informed that she had carpal tunnel syndrome and that he never stated that she would need surgery.  In mid-September, Dr. Johnson restricted Price's work to light duty with limited arm movement, not to exceed eight hours per day.  Price gave supervisor Carolyn Walker a note from Dr. Johnson

_____

[2]29 U.S.C. § 2601 et seq.

[3]29 U.S.C. § 621 et seq.

[4]42 U.S.C. § 12101 et seq.

2

relaying this restriction. Marathon accommodated the restricted work recommendation, placing Price on a salvage line that entailed nonrepetitive motion. Price testified that while she worked on the salvage line she was required to perform duties that were never before required of salvage line workers. She stated specifically that she first had to remove mold from the cheese by cutting through its paper wrapping, then had to place the cheese in a barrel, and finally had to remove all of the paper from the barrel. According to Price, the usual method is to remove the paper first and then remove the mold. Marathon countered that she was required to cut through the paper first, as removing the paper initially would have contaminated the entire batch of cheese.

Price requested a transfer to her old job on the two-pound line, but Trace denied this request. Her subsequent request to be placed on the random weight line was also denied.

Price obtained a release to full duties from Dr. Johnson at the end of September. In October, Price requested overtime and worked fifty-two hours in the last week of the month, which was the week before she was fired. She continued to see Dr. Johnson in October. Price claims that the October visits involved her carpal tunnel syndrome and stomach problems associated with her treatment. According to Dr. Johnson's deposition testimony, however, these visits dealt solely with her blood pressure.

On Friday, November 4, Price asked to speak with Walker and Ronnie Johnson, another plant supervisor. According to Marathon's witnesses, Price left work without permission after expressing her

3

unwillingness to train or supervise new employees on the five-pound line,[5] as she was not a supervisor.  Rather, she stated that she would not work as a supervisor and that they could get one "back there."  Price testified that she became so ill that day that she was unable to perform her duties.  She contends that she informed her supervisors that she was too sick to work and was given permission to leave.  Marathon's witnesses denied that Price complained of any pain; they testified that when asked whether she sought permission to leave work to see the doctor, she responded that she did not have a doctor's appointment. In fact, she did not see a doctor that day.

On the ensuing Monday, November 7, Price reported for work with a doctor's excuse that she obtained during an office visit that morning.  The excuse addressed only that day; however, according to Price, she told Trace that Dr. Johnson could confirm that her condition existed prior to November 4.

Trace fired Price that morning.  He testified that he did so because she had left work early without permission on the preceding workday (Friday, November 4), in violation of company policy.  Marathon has a posted policy that prohibits an employee from leaving work without first notifying and obtaining permission from a supervisor.

Price testified that she is the only Marathon employee ever fired for leaving work early.  Marathon rebutted Price's testimony

---

[5]She had worked on the five-pound line that day and previously when there was insufficient salvage cheese to be opened.

with evidence that other employees had been discharged for leaving work without authorization.

In support of her age discrimination claim, Price testified that two years prior to her discharge Trace had joked that he wanted to get rid of older workers to bring younger employees into the company.  To refute her age discrimination claim, Marathon adduced evidence that when Price was dismissed, the "bulk" of its employees were over forty years old.  Additionally, Marathon's evidence shows that in 1992, when Trace became plant manager, he re-hired many former employees who had been laid off, three of whom were at least fifty years old.  Marathon also hired younger individuals who were referred by another company.

Price filed suit against Marathon in May 1995.  A jury trial was held in July 1996.  Marathon moved for judgment as a matter of law at the conclusion of all of the evidence.  The trial court granted this motion, dismissing Price's claims with prejudice.  A notice of appeal was timely filed.

II

ANALYSIS

A.   STANDARD OF REVIEW

We review the district court's decision to grant judgment as a matter of law de novo, applying the same legal standard as the district court.[6]  Judgment as a matter of law is proper after a party has been fully heard by the jury on a given issue and "there

---

[6]Omnitech Int'l Inc. v. Clorox Co., 11 F.3d 1316, 1322-23 (5th Cir. 1994).

is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue. . . ."[7]  In evaluating such a motion, the court must consider all of the evidence in the light most favorable to the nonmovant, drawing all factual inferences in favor of the non-moving party, and leaving credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts to the jury.[8]

B.    APPLICABLE LAW

1.    <u>FMLA — Did Price adduce sufficient evidence to allow a reasonable jury to find that she suffered from a serious health condition</u>?

The FMLA entitles an eligible employee to as much as twelve weeks leave from work when he has a serious health condition that makes him unable to perform the essential functions of his position.[9]  Such leave may be taken intermittently or on a reduced leave schedule when medically necessary.[10]  The FMLA further provides that, upon return from leave, an employee shall be restored to the position of employment he held when the leave commenced or to an equivalent position.[11]

The FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves

---

[7]FED. R. CIV. P. 50(a).

[8]<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255; 106 S.Ct. 2505, 2513 (1986); <u>Conkling v. Turner</u>, 18 F.3d 1285, 1300 (5th Cir. 1994).

[9]29 U.S.C. § 2612(a)(1).

[10]29 U.S.C. § 2612 (b)(1).

[11]29 U.S.C. § 2614(a)(1).

6

-- (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."[12]  The interim regulations applicable to this claim clarify what is meant by a serious health condition.[13]  A "serious health condition" involves

> (1) Any period of incapacity or treatment in connection with or consequent to inpatient care ... in a hospital, hospice, or residential medical care facility;

> (2) Any period of incapacity requiring absence from work, school, or other regular daily activities, of more than three calendar days, that also involves continuing treatment by (or under the supervision of) a health care provider; or

> (3) Continuing treatment by (or under the supervision of) a health care provider for a chronic or long-term health condition that is incurable or so serious that, if not treated, would likely result in a period of incapacity of more than three calendar days; ....[14]

"Continuing treatment" means one or more of the following:

> (1) The employee or family member in question is treated two or more times for the injury or illness by a health care provider.  Normally this would require visits to the health care provider ....

> (2) The employee or family member is treated for the injury or illness two or more times by a provider of health care services ... under the orders of, or on referral by, a health care provider, *or* is treated for the injury or illness by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider ——for example, a course of medication or therapy ——to resolve the health condition.

---

[12]29 U.S.C. § 2611(11).

[13]As Price's claim arose in November 1994, the interim regulations apply to this action.  The final regulations took effect on February 6, 1995.  69 F.R. § 2180.

[14]29 C.F.R. § 825.114(a) (1994).

(3) The employee or family member is under the continuing supervision of, but not necessarily being actively treated by, a health care provider due to a serious long-term or chronic condition or disability which cannot be cured....[15]

A "chronic serious health condition" is one that requires periodic visits for treatment, continues over an extended period of time, and may cause episodic rather than a "continuing" period of incapacity.[16]

Price contends that on November 4, 1994, she was suffering from a serious health condition, carpal tunnel syndrome, which kept her from performing her job. Marathon maintains that as a matter of law Price did not suffer from a serious health condition and thus is not entitled to recover under the FMLA. Marathon asserts that she merely suffered from a short term condition requiring brief treatment and recovery. To support this position, Marathon's evidence demonstrates that Price performed all of her job functions, and even asked for and received overtime during the week preceding her firing.

As Price did not receive inpatient care for her condition, she must meet the FMLA's requirements of receiving continuing treatment by a health care provider to qualify as having a serious health condition. Given the fact that she worked on the Friday that she left and reported for work on the following Monday, she does not satisfy the FMLA's "period of incapacity ... of more than three

---

[15] 29 C.F.R. § 825.114(b) (1994).

[16] 29 C.F.R. § 825.114(a)(2)(iii).

8

consecutive calendar days" requirement. Price also contends that she suffered from a "chronic serious health condition," which eliminates the need for an absence of more than three days as well as for treatment during the absence.[17]

Pretermitting consideration of the three-day element, and notwithstanding the question whether or not her condition was chronic for purposes of the FMLA, we conclude that Price failed to adduce sufficient evidence to allow a reasonable jury to find that she suffered from a serious health condition.[18] The following facts are not in serious dispute. Price first visited Dr. Johnson in July 1994 with complaints of pain in her right arm and elbow. Subsequently, she obtained a nerve conduction study and visited Dr. Johnson approximately six to eight times prior to her November firing. Two of these visits had nothing to do with carpal tunnel syndrome. Dr. Johnson placed Price on modified work duties for a two week period, but returned her to a full work schedule at her request. In his deposition, Dr. Johnson stated that she had a "mild to moderate impairment," for which he prescribed conservative

---

[17]29 C.F.R. 825.114(e). It is uncertain whether the three day requirement applies to chronic serious health conditions. See Kaylor v. Fannin Reg'l Hosp., Inc., 946 F.Supp. 988, 997 (N.D. Georgia 1996).

[18]Marathon also contends here, as it did in the district court, that Price failed to give notice sufficient to trigger consideration under the FMLA. While it is not necessary for an employee to invoke the statute expressly, the information imparted to the employer must be sufficient to give reasonable notice of the request to leave for a serious health condition. Manuel v. Westlake Polymers Corp., 66 F.3d 758, 764 (5th Cir. 1995). Given our disposition of this case on grounds of "serious health condition," we need not, and therefore do not, address the notice issue.

9

treatment. He acknowledged that "[i]n more severe cases, I would consider splinting the wrist so as to prohibit movement of the wrist. I might consider taking her off work altogether."[19] Dr. Johnson did not, however, prescribe either of these treatments for Price. We acknowledge that carpal tunnel syndrome, if sufficiently severe, can be a serious health condition; but Price's manifestation of this condition, as described by her treating physician, did not rise to the level of "serious health condition" for purposes of the FMLA. Finally, there is a dearth of evidence that she was actually incapacitated during her absence on Friday afternoon and the weekend.

Both Price and Marathon rely on Brannon v. Oshkosh B'Gosh, Inc.[20] to support their respective legal positions. In Brannon, the court held that an employee's gastroenteritis and upper respiratory infection did not constitute a serious health condition. The court stated that the regulations have developed a bright line test for determining which illnesses qualify as serious health conditions. If an employee is "(1) incapacitated for more than three days, (2) seen once by a doctor, and (3) prescribed a course of medication, such as an antibiotic, she has a 'serious health condition' worthy of FMLA protection."[21] The Brannon court found that although the plaintiff stayed home from work she could not prove that it was due to a serious health condition — that is, she

---

[19]Deposition of Dr. Johnson, p.30, lines 22-24.

[20]897 F. Supp. 1028, 1035 (M.D. Tenn. 1995).

[21]Id. at 1036.

could not prove that she had been incapacitated or unable to work.[22] The court based this conclusion on the facts that (1) the plaintiff's doctor never advised her to refrain from work, (2) the plaintiff's own testimony was insufficient to prove that her absence was necessary; and (3) her doctor could not testify that she was unable to perform the functions of her job in light of her illness.[23] When we follow the reasoning in <u>Brannon</u>, we find inescapable the conclusion that Price did not suffer from a serious health condition and that she failed to prove incapacity.

Marathon's witnesses' accounts of the incident are consistent, while Price's unverified story has all the hallmarks of a post-hoc attempt to make a silk purse out of a sow's ear. She has endeavored to create a FMLA cause of action where none exists. We conclude that Price did not adduce sufficient evidence to preclude judgment as a matter of law under the FMLA.

2. <u>ADA —— Did the district court err in granting judgment as a matter of law against Price on her ADA claim</u>?

The ADA prohibits discrimination in employment against persons with disabilities, providing that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms,

_____

[22]<u>Id.</u> at 1037.

[23]<u>Id.</u>

11

conditions, and privileges of employment."[24]  "Discrimination" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity ...."[25]  A "disability" includes:  (1) a physical or mental impairment that substantially limits one or more major life activities; (2) a record of such an impairment; or (3) being regarded as having such an impairment.[26]

Under the EEOC regulations a person is deemed to be "regarded as having a disability" if he:

> (1)  Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
>
> (2)  Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
>
> (3)  Has none of the impairments defined in paragraph (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.[27]

An employer does not necessarily regard an employee as having a substantially limiting impairment simply because the employer believes that the employee is incapable of performing a particular

---

[24]42 U.S.C. § 12112(a).

[25]42 U.S.C. § 12112(b)(5)(A).

[26]42 U.S.C. § 12102(2).

[27]29 C.F.R. § 1630.2(l).

job.  Instead, an employer regards an employee as substantially limited in his ability to work by believing that the employee's impairment forecloses the general type of employment involved.[28]

In granting Marathon's motion for judgment as a matter of law on Price's ADA claim, the district court relied heavily on our opinion in Ellison v. Software Spectrum, Inc.[29]  The court held that, as she failed to establish a substantial limitation of one or more major life activities, Price does not have a disability under the ADA.  In the area of work, she was able to perform other jobs and had worked overtime preceding her discharge.  Further, she testified that she believed she was capable of doing other jobs available to her at Marathon.  The court also held on the basis of Price's evidence that Marathon did not regard her as being disabled, concluding that the company did not consider her condition to preclude the type of employment involved.

We agree with the analysis of the district court.  Price has failed to present evidence sufficient to allow a reasonable jury to conclude that she was a victim of disability discrimination.

3. <u>ADEA — Did the district court err in granting judgment as a matter of law against Price on her ADEA claim</u>?

Under the ADEA it is unlawful for an employer to discharge an employee based on age.[30]  A plaintiff must prove intentional discrimination to establish a violation.  This can be accomplished

---

[28]<u>Ellison v. Software Spectrum, Inc.</u>, 85 F.3d 187, 192 (5th Cir. 1996); 29 C.F.R. § 1630.2(j)(3)(i).

[29]<u>Id.</u>

[30]29 U.S.C. § 623(a)(1).

13

by presenting either direct or indirect evidence of discrimination.

Direct evidence of discrimination is rare, so a plaintiff may use indirect evidence and reasonable inferences to establish an ADEA claim under the three step <u>McDonnell Douglas</u> burden-shifting analysis. In the first step, a plaintiff must endeavor to present a prima facie case, thereby establishing a rebuttable presumption of discrimination.[31] A prima facie showing of age discrimination requires a plaintiff to prove that he was: (1) discharged; (2) qualified for the position; (3) within the protected class; and (4) either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his age.[32]

The second step is taken if a plaintiff establishes a prima facie case. In this step the defendant must offer a legitimate, nondiscriminatory reason for its decision.[33]

The third step is taken if the defendant is able to articulate a legitimate, nondiscriminatory reason. The presumption of discrimination fades and the plaintiff must prove by a preponderance of the evidence that the employer's articulated reason is a pretext for unlawful discrimination.[34] To establish

---

[31]<u>Armendariz v. Pinkerton Tobacco Co.</u>, 58 F.3d 144, 149 (5th Cir. 1995).

[32]<u>Id.</u>, (citing <u>Bodenheimer v. PPG Indus., Inc.</u>, 5 F.3d 955, 957 (5th Cir. 1993)).

[33]<u>Id.</u> at 149.

[34]<u>Id.</u>,(citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 510-11; 113 S.Ct. 2742, 2749 (1993)).

14

pretext, a plaintiff cannot merely rely on his subjective belief that discrimination has occurred;[35] rather, he has the ultimate burden of persuasion in proving intentional discrimination throughout the case. The plaintiff must prove that age "actually played a role in" and "had a determinative influence on" the employer's decision-making process.[36] Pretext can be shown by, inter alia, age-biased comments. Age-related remarks are relevant to determining whether age discrimination has occurred;[37] however, mere "stray remarks" such as "a younger person could do faster work" or calling an employee an "old fart" have been held to be insufficient to establish discrimination.[38] The district court held that there was simply no probative evidence that age was a determinative factor in the decision to terminate Price.

Price insists that Marathon's proffered reason for discharging her — leaving work early without permission, in violation of work policy — is pretext. She contends that she established a prima facie case and that she demonstrated that the defendant's proffered reason was pretextual. As she was age forty-nine when discharged, she is within the protected class. She also maintains that she was qualified for her job. To satisfy the final prong, Price states

---

[35]Waggoner v. City of Garland, Texas, 987 F.2d 1160, 1166 (5th Cir. 1993).

[36]Armendariz, 58 F.3d at 149, (citing Hazen Paper Co. v. Biggins, 507 U.S. 604, 610; 113 S.Ct. 1701, 1706 (1993)).

[37]See EEOC v. Manville Sales Corp., 27 F.3d 1089, 1093 (5th Cir. 1994); Bienkowski v. American Airlines, Inc., 851 F.2d 1503, 1507 (5th Cir. 1988).

[38]Waggoner, 987 F.2d at 1166 (5th Cir. 1993).

15

that Trace once commented that he wanted to get rid of the older employees and hire "young blood" and that after he took over, most of the new hires were in their twenties and early thirties. She also expressed the belief that she was treated differently than younger employees. As evidence of such treatment she testified that after she left work early, Trace announced that he had found a way to get rid of her. Price further maintains that Trace did not discipline younger employees for violating this company policy.

All of this amounts to little more than Price's subjective belief that she was fired because of age. Assuming that the age-related comment was made, it was a stray remark uttered two years prior to Price's firing. In contrast, Marathon adduced hard evidence that Trace rehired many older employees and selected the new hires based on recommendations received from an employment company. Finally, any lack of evidence of other employees being fired for violating Marathon's leave policy is understandable, given that this policy had been in effect for only a few months when Price was fired. We agree with the district court's analysis and find the evidence of intentional age discrimination woefully lacking.

III

CONCLUSION

Our plenary review places us in agreement with the district court's determination that Marathon was entitled to a judgment as a matter of law dismissing all of Price's claims. For the foregoing reasons, the judgment of the district court is, in all respects,

AFFIRMED.

16