United States Court of Appeals
Fifth Circuit

**F I L E D**

June 25, 2004

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 03-20281

ERVIN E. HAWKINS,

Plaintiff-Appellant

VERSUS

FRANK GILLMAN PONTIAC, GILLMAN, LTD., and THE GILLMAN COMPANIES,

Defendants-Appellees.

Appeal from the United States District Court
For the Southern District of Texas, Houston Division

(H-02-CV-80)

Before DUHÉ, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Ervin E. Hawkins brought this action against his former employer, Frank Gillman Pontiac, Gillman Ltd., and the Gillman Companies ("Gillman Pontiac") alleging age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA")[1] and intentional infliction of emotional distress ("IIED") under Texas state law. The district court found that both

---

[*] Pursuant to 5ᵀᴴ Cɪʀ. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ Cɪʀ. R. 47.5.4.

[1] 29 U.S.C. §621, et. seq..

-1-

claims were barred by the statute of limitations and granted summary judgment in Gillman Pontiac's favor. We REVERSE the district court's grant of summary judgment for Gillman Pontiac on Hawkins's ADEA claim. But we AFFIRM summary judgment for Gillman Pontiac as to Hawkins's Texas state law IIED claim.

## BACKGROUND

For summary judgment purposes, we review the depositions, affidavits, and documents in the record in the light most favorable to Hawkins, the non-movant.[2] Applying that standard, the following facts reasonably may be found or inferred from the record.

Hawkins joined Gillman Pontiac as an employee in 1964. He was promoted to a sales manager position in 1968. In June 1992, Hawkins was approached by one of his supervisors who offered Hawkins a mandatory transfer to the position of "fleet sales manager." Although Hawkins did little to investigate the fleet sales manager position, based on his 20 years' experience with Gillman Pontiac, he believed that the transfer would be a demotion. Gillman Pontiac disputes that the offered transfer was a demotion, but it is undisputed that the compensation for the new position would have been solely commission-based whereas Hawkins's existing sales manager position was compensated on a salary plus commission basis.

The transfer Gillman Pontiac offered to Hawkins was mandatory.

---

[2] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

In both his deposition and affidavit testimony, Hawkins testified that when he asked why he could not stay in his position as a sales manager, Hawkins's direct supervisor told him that Gillman Pontiac wanted "new blood" in the sales manager position. According to Hawkins, when Hawkins asked his supervisor what the "new blood" comment meant, the supervisor clarified the comment by stating, "you know, younger people." Hawkins decided to decline the mandatory transfer and ceased working at Gillman Pontiac.

In June of 1993, nearly a year after Hawkins ended his employment with Gillman, Hawkins filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC"). Hawkins engaged counsel, Phyllis Finger, to represent him before the EEOC. Accordingly, Finger directed the EEOC to keep her apprised of the developments in Hawkins's case.

The EEOC administrative file, which was attached to Gillman Pontiac's motion for summary judgment, reflects no activity on Hawkins's discrimination charge between August 1994 and August 1998. During that time, Finger closed her law practice and changed her mailing address. Finger's affidavit states that she duly informed the EEOC of the closure of her legal practice and her new mailing address. The EEOC file, however, is devoid of any annotations or documentation corroborating Finger's testimony.

In September of 1998, the EEOC issued a Dismissal and Notice of Rights ("right-to-sue") letter, which was mailed but returned

undelivered. The right-to-sue letter itself is correctly addressed to Hawkins and marked with certified mail number Z 062 781 349. But an empty window envelope in the EEOC file with the right-to-sue letter did not indicate to whom the letter had been mailed. The envelope is postmarked, dated, and has the certified mail label attached. The certified mail receipt bears a handwritten note suggesting that the right-to-sue letter was to be sent to Finger. The right-to-sue letter was returned to the EEOC undelivered and stamped "Forwarding Order Has Expired."

Hawkins's mailing address in September of 1998 was the same address he had when he filed his charge of discrimination with the EEOC. Hawkins was not traveling in September of 1998, and Hawkins did not recall having any trouble with his mail during that period. Additionally, Hawkins did not receive the September 1998 right-to-sue letter until it was handed to him on October 16, 2001 when Hawkins went to the EEOC office with his current counsel.

On January 10, 2002, within 90 days of his October 16, 2001 receipt of the September 1998 right-to-sue letter, Hawkins filed suit in federal district court claiming that: (1) he was constructively discharged due to his age when Gillman Pontiac made the non-optional transfer offer; and (2)the constructive discharge resulted in emotional distress because he was angered and embarrassed due to the loss of his long-time position with Gillman Pontiac.

-4-

Gillman Pontiac moved for summary judgment on both claims. The district court granted summary judgment concluding that both claims were time-barred because: (1) the ADEA claim was not filed within 90 days of the date that the EEOC mailed the right-to-sue letter; and (2) the EEOC proceedings did not toll the two year statute of limitations applicable to IIED claims under Texas state law. Hawkins timely appealed.

**ANALYSIS**

We review the district court's grant of summary judgment *de novo*, applying the same criteria used by the district court.[3] Summary judgment is only proper if the movant can show that there is no genuine dispute as to any material issue of fact and that he is entitled to judgment as a matter of law.[4] Morever, we may sustain a district court's grant of summary judgment "on any ground supported by the record, even if it is different from that relied on by the district court."[5]

*I. Plaintiff's ADEA claim*

In order to file an age discrimination suit under the ADEA, a

---

[3] Hanks v. Transcon. Gas Pipe Line Corp., 953 F.2d 996, 997 (5th Cir. 1992)(internal citations omitted).

[4] See Fed. R. Civ. P. 56(c).

[5] See Holtzclaw v. DSC Communications Corp., 255 F.3d 254, 258 (5th Cir. 2001)(internal citation omitted).

-5-

plaintiff must first file an administrative charge with the EEOC.[6] The time period for filing suit under the ADEA is no earlier than 60 days after a charge is filed and no later than 90 days after receiving a right-to-sue letter from the EEOC.[7] Thus, an ADEA plaintiff need not wait on a right-to-sue letter to be issued by the EEOC before he files suit.[8] But if the plaintiff waits until the EEOC issues a right-to-sue letter, the 90-day filing requirement in ADEA is treated as a statute of limitations, and it is subject to tolling and waiver.[9] We have held that delivery of a right-to-sue letter to the address designated by the plaintiff suffices to start the 90-day filing period unless: (1) the plaintiff, through no fault of his own, failed to receive the letter or; (2) the statute should be tolled for some other equitable reason until the plaintiff actually received notice.[10]

Applying the pertinent legal principles to the facts that

---

[6] See Julian v. City of Houston, 314 F.3d 721, 725 (5th Cir. 2002).

[7] 29 U.S.C. § 626 (d)-(e).

[8] Julian, 314 F.3d at 726 (internal citations omitted).

[9] See Espinoza v. Missouri Pac. R.R. Co., 754 F.2d 1247, 1249 (5th Cir. 1985).

[10] See Espinoza, 754 F.2d at 1249; see also Franks v. Bowman Transp. Co., 495 F.2d 398, 405 (5th Cir. 1974)(holding that if a plaintiff failed to receive a notice of right-to-sue thought no fault of his own, delivery of the letter to the mailing address cannot be considered to constitute statutory notification), rev'd on other grounds, 424 U.S. 747 (1976).

reasonably may be found and inferred in Hawkins's favor from the evidence of record, we conclude that a reasonable trier of fact could find that Hawkins failed to receive a right-to-sue letter prior to October 16, 2001 through no fault on his part. The record is unclear as to the address that the EEOC intended the right-to-sue letter to be delivered because the right-to-sue letter was addressed to Hawkins but a hand written note on the certified mail receipt indicates that the EEOC actually attempted to mail the letter to Finger. Ms. Finger states that she notified the EEOC that, as Hawkins's attorney, she would receive mailings for him. She said that she later notified the EEOC of her new address when it was changed. Both Hawkins and Finger attested that neither of them has ever received a right-to-sue letter in this case prior to Hawkins's October 16, 2001 visit to the EEOC office, although their correct mailing addresses were on file with the EEOC. Thus, reading the record in the light most reasonably favorable to Hawkins, neither Hawkins nor his attorney can be held responsible for Hawkins's non-receipt of the right-to-sue letter. Accordingly, there is a genuine dispute as to a material issue of fact that must be resolved at trial, *viz.*, whether Hawkins and his former counsel were without fault in failing to receive the September 1998 right-to-sue letter.

The question now becomes whether Hawkins can withstand Gillman Pontiac's summary judgment challenge to the merits of Hawkins's

ADEA claim.  Although the district court did not specifically consider this prong of Gillman Pontiac's attack, we next determine if the district court's grant of summary judgment may be sustained on any other ground supported by the record.

Under ADEA, an employer may not discharge an employee on the basis of that employee's age.[11]  A plaintiff must prove intentional discrimination to establish a violation of the ADEA, which he can do by presenting either direct or circumstantial evidence.[12]

In this case, Hawkins presented direct evidence of intentional discrimination because, according to Hawkins, the reason given by his direct supervisor for the mandatory transfer was that Gillman Pontiac wanted "new blood," "you know, younger people" in the sales manager position that Hawkins occupied.[13]  But even with summary judgment proof of direct evidence of intentional discrimination, Hawkins still must show that he was constructively discharged in order to survive Gillman Pontiac's summary judgment challenge to his ADEA claim.[14]

A constructive discharge occurs when the employer makes

---

[11]  See 29 U.S.C. 623(a)(1).

[12]  See Price v. Marathon Cheese Corp., 119 F.3d 330, 336 (5th Cir. 1997).

[13]  See Fabella v. Soccorro Indep. Sch. Dist., 329 F.3d 409, 415 (5th Cir 2003).

[14]  Faruki v. Parson S.I.P., Inc., 123 F.3d 315, 318-19 (5th Cir. 1997)(internal citations omitted).

working conditions so intolerable that a reasonable employee would feel compelled to resign.[15]  Courts consider a variety of factors in determining whether an employee was constructively discharged, including the following: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer was accepted or not.[16]  The question is not whether Hawkins felt compelled to resign, but whether a reasonable employee in Hawkins's situation would have felt so compelled.[17]

After reviewing the record, a reasonable fact-finder could conclude that the mandatory transfer would have been a demotion in light of the undisputed changes in Hawkins's salary structure and the significant reduction in number of employees he would manage in the offered position.  A reasonable fact-finder could also conclude that Hawkins performed sufficient research on the offered position prior to resigning (in light of his 20-plus years' experience at

---

[15] See id.; Ward v. Bechtel Corp., 102 F.3d 199, 202 (5th Cir. 1997).

[16] Barrow v. New Orleans S.S. Ass'n, 10 F.3d 292, 297 (5th Cir. 1994).

[17] Id. at 297 n.19 (citing McKethan v. Texas Farm Bureau, 996 F.2d 734, 740-41 (5th Cir.), reh'g denied, 3 F.3d 441 (5th Cir. 1993), cert. denied, 510 U.S. 1046, 126 L. Ed. 2d 661, 114 S. Ct. 694 (1994)).

Gillman Pontiac) to justify a finding that Hawkins had been constructively discharged. Thus, the district court's grant of summary judgment to Gillman Pontiac cannot be sustained based on the merits of Hawkins's ADEA claim.[18]

*II. Hawkins's State IIED claim*

The applicable statute of limitations for IIED claims in Texas is two years.[19] Because Hawkins left Gillman Pontiac's employ in July of 1992, the district court concluded that Hawkins's IIED claim filed in federal court nine years later is time-barred since the EEOC proceedings did not toll the applicable statute of limitations period. However, neither Texas nor this court has decided whether EEOC proceedings that a plaintiff is required to exhaust in bringing a federal discrimination claim will toll the Texas statute of limitations applicable to the state law IIED claim. Because Hawkins cannot survive summary judgment on the merits of his IIED claim, however, we need not decide the *res nova* state statute of limitations issue.

In order to establish a claim for IIED under Texas law, Hawkins must show that: (1) Gillman Pontiac acted intentionally or recklessly; (2) its conduct was extreme and outrageous; (3) its

---

[18] See Fierros v. Tx. Dep't of Health, 274 F.3d 187, 190 (5th Cir. 2001).

[19] TEX. CIV. PRAC. & REM. CODE § 16.003 (West. 2004); Matlock v. McCormick, 948 S.W.2d 308, 311 (1997).

-10-

actions caused Hawkins emotional distress; and (3) Hawkins's resulting emotional distress was severe. Garden-variety employment disputes do not usually constitute an extreme and outrageous action for the purpose of supporting a claim for IIED.[20] Moreover, "mere worry, anxiety, vexation, embarrassment, or anger" are not sufficient to make out an IIED claim.[21]

The record demonstrates that Hawkins was subjected to a few discriminatory comments and that he was worried and embarrassed by the loss of his job. The record also shows that Hawkins endured a few sleepless nights, which he self-medicated with aspirin and over-the-counter sleeping aids. Based on this record evidence, Hawkins has suffered neither extreme and outrageous conduct nor the severe emotional distress necessary to establish an IIED claim. Therefore we conclude that, even assuming Hawkins timely filed his IIED claim, summary judgment on this claim is nevertheless warranted.

### CONCLUSION

Because we conclude that there are genuine disputes of

---

[20] Southwestern Bell Mobile Sys. v. Franco, 971 S.W.2d 52, 53(Tex. 1998)(holding that wrongful termination of employment, without more, is not so extreme and outrageous to support an IIED claim); MacArthur v. Univ. of Tex. Hlth. Ctr., 45 F.3d 890, 899 (5th Cir. 1995)("In the employment context, a claim for intentional infliction of emotional distress will not be supported by the broad range of conduct labeled as 'mere employment disputes.'")(internal citations omitted).

[21] Parkway Co. v. Woodruff, 901 S.W.2d 433, 434 (Tex. 1995).

material fact concerning Hawkins's ADEA claim, we REVERSE the district court's grant of summary judgment on that claim and REMAND the case for further proceedings.  However, because we conclude that Hawkins has not established all the elements of an IIED claim, we AFFIRM the district court's grant of summary judgment on that state law claim.

**REVERSED IN PART; AFFIRMED IN PART; REMANDED.**