# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 21, 2008

Charles R. Fulbruge III
Clerk

No. 07-20757

ROBERT BUGOS

Plaintiff-Appellant

V.

RICOH CORPORATION, doing business as Ricoh Business Systems

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas
4:06-CV-123

Before HIGGINBOTHAM, DAVIS, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

This appeal is from a district court's order granting summary judgment in favor of the employer in an employment discrimination action based on gender under Texas law. The district court found that the employee failed to meet his burden of showing that the employer's legitimate non-discriminatory reason for terminating him was a pretext for discrimination. We agree with the district court and thus affirm the grant of summary judgment.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

Appellee Ricoh Corporation ("Ricoh") sells copiers, printers, scanners, and other similar office products. In September 2004, Houston Branch Manager Doug Stewart ("Stewart") hired Appellant, Robert Bugos ("Bugos"), as a sales manager in its Houston office. Bugos's job as sales manager required his oversight, development, and management of a team of sales representatives called "account executives." At any given time, up to eight account executives were part of Bugos's sales team, including Philip Farmer ("Farmer"), Kathy Reynolds ("Reynolds"), and Tab Figueiredo ("Figueiredo"). Bugos was also responsible for ensuring that his account executives adhered to Ricoh policies, including basic standards of corporate professionalism, inter alia, being punctual and maintaining corporate business hours.[1]

Bugos was also required to monitor his account executives' compliance with the "50-point plan," a system by which Ricoh assigns point values to specific sales activities, with the expectation that account executives earn 50 points daily. Bugos was informed that his own performance would be based on the performance of his account executives. Based on this fact, Bugos was given a six-month sales goal of $975,000.00. After five months of employment, and at the time of his termination, he had only reached 22% of this sales goal.[2]

In November 2004, Dora Lee Brown ("Brown") became Bugos's immediate supervisor. Shortly thereafter, she met with Bugos to discuss development of his sales team. At that time, she encouraged Bugos to hire more women on his sales team. In subsequent conversations with Bugos and with others, Brown made such statements as: "women work harder than men;" "women are better received

_____

[1] According to Ricoh, maintaining corporate business hours means that account executives check in at the office with sales managers both at the beginning and end of the workday.

[2] At the time of his termination, Bugos's admits his performance was the worst of all of the Houston Sales Managers.

by the customer than men;" "women have done better sales at Ricoh than men;" "women are better employees than men."

In December 2004, Farmer requested a transfer off of Bugos's team based on his frustration with the inexperience of the team and with Bugos's ineffective management. In February 2005, Brown noticed that Figueiredo, who had never completed a single sale, was frequently absent from work, and she addressed this situation with Bugos. Despite this discussion, Figueiredo continued to be absent. Brown instructed Bugos to call Figueiredo and demand that he be present in the office the next day, March 2, 2005. Bugos spoke with Figueiredo who explained that his absences from work were based on a personal conflict with a co-worker, the fact that his sales territory was closer to his home than the office, and that the requirement of physical presence in the office was not uniformly enforced. Bugos relayed Figueiredo's excuses to Brown, and she demanded that Bugos issue an "action plan" to Figueiredo mandating his physical presence in the office and warning that a failure to do so could result in his termination. Bugos challenged Brown's demand that he issue the "action plan," and a Ricoh human resources department representative intervened. As a result of the telephone conference between Brown, Bugos, and the human resources representative, on March 2, 2005, Bugos issued the "action plan" to Figueiredo.

Later that day, Brown emailed the human resources department and her supervisor and recommended that Bugos be terminated. In this email, Brown discussed her reasons for the recommendation: her struggle with Bugos on the Figueiredo situation, his struggles with developing his sales team, his failure to utilize development tools provided to him, and his general lack of leadership skills. Based on this information, Brown received clearance from human resources to terminate Bugos's employment. Bugos was terminated on March

3, 2005. Figueiredo was also fired the next day for failure to adhere to his "action plan."

Brown subsequently filled Bugos's position with Dianne Foreman ("Foreman"). Soon thereafter, Brown discussed with Foreman the performance of Reynolds (a member of Bugos's sales team Foreman inherited). When Brown recommended that Foreman place Reynolds on an "action plan," Foreman disagreed and requested additional time to work with Reynolds, which Brown allowed without any disciplinary action toward either Foreman or Reynolds.[3]

In December 2005, Figueiredo filed a charge of gender discrimination with the Equal Employment Opportunity Commission ("EEOC"), which issued a determination letter stating that its investigation revealed sufficient evidence to establish that Brown created an environment in the Houston office that was hostile to males and that females were treated more favorably than males in terms of attendance issues and disciplinary actions. Although he offered testimony on Bugos's behalf, Figueiredo is not a party to the case sub judice.

Bugos also filed a separate charge of gender discrimination with the EEOC and the Civil Rights Division of the Texas Workforce Commission ("TWC"). Both the EEOC and TWC issued right to sue notices, and pursuant to an agreement between the parties, this lawsuit was filed and then was removed to federal district court on diversity grounds. Although this case arises under the Texas Commission on Human Rights Act ("TCHRA")[4], the district court, following Texas precedent, assessed the claim using analogous federal statutes and the cases interpreting them; thus, in this gender discrimination case, the district court applied the standard set forth in McDonnell Douglas Corp. v. Green.[5] The

---

[3] Both Foreman and Reynolds are women.

[4] See TEX. LAB. CODE ANN. § 21.001 et seq. (Vernon 2006).

[5] 411 U.S. 792, 802 (1973).

4

district court granted Ricoh's Motion for Summary Judgment, finding that Bugos failed to establish a genuine issue of material fact on the issue of pretext under that standard. Bugos timely appealed.

## II.

"We review de novo a district court's grant of summary judgment, applying the same standard as the district court."[6] "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"[7] "'If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial.'"[8] "'Doubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party.'"[9] Unsubstantiated and subjective beliefs and conclusory allegations and opinions are not competent summary judgment evidence.[10]

---

[6] Gowesky v. Singing River Hosp. Sys., 321 F.3d 503, 507 (5th Cir. 2003) (citing Walker v. Thompson, 214 F.3d 615, 624 (5th Cir. 2000)).

[7] Id. (quoting FED. R. CIV. P. 56(c); citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)).

[8] Id. (quoting Allen v. Rapides Parish Sch. Bd., 204 F.3d 619, 621 (5th Cir. 2000) (internal quotations and citations omitted)).

[9] Id. (citing Burch v. City of Nacogdoches, 174 F.3d 615, 619 (5th Cir. 1999)).

[10] Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998); Grimes v. Tex. Dept. of Mental Health and Mental Retardation, 102 F.3d 137, 139–40 (5th Cir. 1996) (citing, inter alia, Douglass v. United Servs. Automobile Assn., 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc)); Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir.), cert. denied, 513 U.S. 871 (1994); Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. denied, 506 U.S. 825 (1992).

III.

Bugos's gender discrimination claim arises under § 21.051 of the Texas Labor Code, the TCHRA, which prohibits, in relevant part, the discharge of an individual on the basis of sex.[11] An "unlawful employment practice is established when the complainant demonstrates that . . . sex . . . was a motivating factor for the employment practice, even if other factors also motivated the practice."[12] The purpose of the TCHRA is to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964, as amended.[13] Therefore, analogous federal cases and statutes guide the interpretation of this Texas law.[14] Specifically, McDonnell Douglas, and cases further developing the McDonnell Douglas test, apply to discrimination claims brought under the TCHRA.[15]

Thus, under the McDonnell Douglas framework, the Plaintiff has the initial burden to plead a prima facie case of gender discrimination.[16] To establish a prima facie case, Bugos must show (1) that he is a member of a protected class; (2) that he was qualified for the position; (3) that he suffered an

---

[11] TEX. LAB. CODE ANN. § 21.051(1) (Vernon 1996).

[12] Id. § 21.125(a).

[13] TEX. LAB. CODE ANN. § 21.001(a) (Vernon 1996); Pineda v. United Parcel Svc., 360 F.3d 483, 487 (5th Cir. 2004) (citing Quantum Chem. Corp. v. Toennies, 47 S.W.3d 473, 476 (Tex. 2001)).

[14] Id.; see also Machinchick v. PB Power, Inc, 398 F.3d 345, 356 (5th Cir. 2005); Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 219 n.10 (5th Cir. 2001).

[15] Machinchick, 398 F.3d at 356 (citing, inter alia, Wal-Mart Stores, Inc. v. Canchola, 121 S.W.3d 735, 739 (Tex. 2003)). It should be noted that this Circuit has applied a "modified McDonnell Douglas" approach in discrimination cases, as set forth in Rachid v. Jack in the Box, Inc., 376 F.3d 305, 311 n.8 & 312 (5th Cir. 2004) (following the Supreme Court's decision, after Title VII's amendment, in Desert Palace, Inc. v. Costa, 539 U.S. 90, 101 (2003)).

[16] Machinchick, 398 F.3d at 356; see also Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 317 (5th Cir. 2004).

adverse employment action; and (4) that he was replaced by someone outside the protected class or that similarly-situated employees outside the protected class were more favorably treated.[17] Once Bugos has established a prima facie case, "the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the disparate treatment."[18] If the employer comes forward with legitimate nondiscriminatory reasons for the adverse employment action, Bugos must then prove(1) that the reasons proffered were false and were thus a pretext for discrimination or (2) that even if the reasons are true, gender was a motivating factor.[19] Bugos can meet this burden "by producing circumstantial evidence sufficient to create a fact issue as to whether the employer's non-discriminatory reasons are merely pretext for discrimination."[20] In this case, the parties concede that Bugos has made out a prima facie case of gender discrimination and that Ricoh has proffered a legitimate, non-discriminatory reason for Bugos's termination: that he was a failing and ineffective sales manager. Although gender discrimination may be proven either by showing a defendant's legitimate, nondiscriminatory reason to be pretext or by showing that discrimination was a motivating factor, the only issue preserved in this appeal is whether Bugos raised a genuine issue of fact on pretext; thus, we only consider whether Ricoh's legitimate, non-discriminatory reason was a pretext for gender discrimination.

Bugos argues that the district court erred by (1) not considering, in the pretext determination, evidence that was presented in his prima facie case

---

[17] See Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512–13 (5th Cir. 2001).

[18] Machinchick, 398 F.3d at 356 (internal quotations omitted).

[19] Id.

[20] Id. at 354.

regarding the fact that he was replaced by a woman, comments made about Brown by co-employees, and an EEOC determination letter in Figueiredo's case; (2) not finding that a fact issue was created because the proffered facts in support of Bugos being an ineffective manager were allegedly false; (3) concluding that Ricoh's failure to give him prior notice of his performance problems was not probative of pretext; (4) not finding that a similarly situated female employee was treated differently; and (5) not concluding that Brown's gender-based comments support an inference of pretext.

Ricoh counters by arguing (1) that Bugos's prima facie evidence is not probative of pretext; (2) that Bugos failed to present evidence demonstrating that Ricoh's proffered reason was false; (3) that Ricoh's policy specifically does not require progressive discipline; (4) that Bugos has not presented a similarly situated person who was treated more favorably than he was; and (5) that Brown's comments are not probative of pretext and are, in any event, "stray remarks" not considered in a pretext inquiry and, alternatively, cannot be considered where they are the only evidence of pretext.

As to the first issue, whether Bugos's prima facie evidence supports a finding of pretext, the United States Supreme Court, in Reeves v. Sanderson Plumbing Prods., has clearly established that "the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual."[21]  Regarding Bugos's argument that co-employees' impressions of Brown's motivations present an issue of fact on pretext, those employees speculate that Brown assigned accounts, evaluated the performance of, and generally treated men differently from women and hypothesize that Brown fired Bugos so that she could fill his position with a female.  However, we have held

---

[21] 530 U.S 133, 143 (2000) (citing Tex. Dept. of Comm. Affairs v. Burdine, 450 U.S. 248, 255 n.10 (1981)).

that pretext cannot be established by mere subjective beliefs that discrimination motivated an employer's actions.[22] Here, the conclusory statements of former Ricoh employees relaying their subjective general beliefs that Brown treated men less favorably than women are insufficient to show pretext with regard to Bugos's termination.[23] Pretext may not be established by mere subjective belief; instead, "[t]he plaintiff must prove that [the protected characteristic] 'actually played a role in' and 'had a determinative influence on' the employer's decision-making process."[24]

Bugos next argues that his prima facie evidence of the EEOC determination letter in Figueiredo's case is probative of pretext. While we have held that EEOC determination letters can be probative of discriminatory intent, in this case, the EEOC letter was written in Figueiredo's case, and, as the district court noted, he is not a party to this action. Thus, because the EEOC determination was presented in Figueiredo's case rather than Bugos' case and was not argued as evidence of pretext in Bugos's opposition to summary judgment, the district court did not abuse its discretion in not discussing it.

Second, Bugos alleges that the legitimate nondiscriminatory reason proffered by Ricoh was in fact false, and thus he has raised a fact issue on pretext. However, "[a] dispute in the evidence concerning . . . job performance does not provide a sufficient basis for a reasonable factfinder to infer that [the]

---

[22] Roberson v. Alltel Info. Servs., 373 F.3d 647, 654 (5th Cir. 2004) (citing, inter alia, Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002) ("This Court has cautioned that conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment.")).

[23] Bugos presented testimony of three former Ricoh employees — Dianna Victoria, David Shapiro, and Tab Figueiredo — that Brown generally treated women better than men. Shapiro also hypothesized that Brown fired Bugos so that she could fill his position with a female employee.

[24] Price v. Marathon Cheese Corp., 119 F.3d 330, 337 (5th Cir. 1997).

proffered justification is unworthy of credence."[25] "The question is not whether an employer made an erroneous decision; it is whether the decision was made with a discriminatory motive."[26] Thus, we consider whether an employer's good faith perception of Bugos's performance, accurate or not, was the real reason for his termination.[27] Brown set forth a number of problems with Bugos — that he did not utilize Ricoh's "50 point plan," that he did not take advantage of the suggestions of a co-worker, Dave Higbie, to improve his performance, and that he had difficulty in managing Figueiredo. Bugos has not shown that Brown did not in good faith believe these reasons given for Bugos's termination or, accordingly, that these reasons were not the real reason for his termination.

Third, Bugos contends that Ricoh's progressive discipline policy was not followed leading up to his termination, which is probative of pretext. While we have considered evidence that an employer did not follow its discipline policy, which by its language should have been "followed in most circumstances," prior to terminating an employee as evidence of pretext,[28] Ricoh's policy simply did not require progressive discipline leading up to termination. Rather, Ricoh's policy, though it provided generally for progressive discipline, stated that "[e]ach individual situation must be considered on its own merits to determine the appropriate measures to be taken, including under certain circumstances, termination without prior notice." It further states that "[d]epending on the individual circumstances and the time frame involved, it may be appropriate to

---

[25] Mayberry, 55 F.3d at 1091 (citing Little v. Republic Refining Co., Ltd., 924 F.2d 93, 97 (5th Cir. 1991) ("The existence of competing evidence about the objective correctness of a fact underlying a defendant's proffered explanation does not in itself make reasonable an inference that the defendant was not truly motivated by its proffered justification.")).

[26] Id.

[27] See Waggoner v. City of Garland, Tex., 987 F.2d 1160, 1165–66 (5th Cir. 1993).

[28] See Machinchick, 398 F.3d at 355 n.29.

bypass one or more steps of this policy." Thus, as the district court noted, Brown was within her discretion to bypass the graduated disciplinary procedure in terminating Bugos.

Fourth, Bugos contends that a similarly-situated female employee was treated differently than he, which creates an inference of pretext. Additionally, Bugos argues that the fact that he was replaced by this female employee is probative of pretext. An employee is "similarly situated" to the plaintiff, however, if her circumstances "are comparable in all material respects . . . [and] the plaintiff must usually show that the misconduct for which he was discharged was nearly identical to that engaged in by [the other] employee whom [the employer] retained."[29] The district court rightly noted that Foreman, whom Bugos alleges is a similarly situated female employee, is distinguishable from Bugos in material aspects. Foreman was at 126% to quota on sales while Bugos was only at 22%. Furthermore, Bugos was terminated in part for his failure to manage Figueiredo by opposing disciplining him for his failure to come to the office while Foreman was not disciplined because she was requesting more time to help a sales associate succeed at selling, not making excuses for her absence. As such, Foreman is not a similarly situated female employee to Bugos, and Brown's actions toward Foreman are not probative of pretext in Bugos's termination. Additionally, although Bugos was replaced by this female employee, this fact is not probative of pretext in light of Foreman's success and Bugos's failure as a manager.

Finally, Bugos points out that under our jurisprudence Brown's gender-based workplace remarks can be circumstantial evidence of discriminatory intent and can be used to prove pretext.[30] Ricoh argues that the comments are

---

[29] Ysleta Indep. Sch. Dist. v. Monarrez, 177 S.W.3d 915, 917–18 (Tex. 2005).

[30] See, e.g., Russell v. McKinney Hosp. Venture, 235 F.3d 219, 225 n.9 (5th Cir. 2000).

not probative because they are "stray remarks" unconnected to Bugos's termination. Post-Reeves, however, this Court has taken a cautious view of the "stray remarks" doctrine.[31] Such remarks "are appropriately taken into account when analyzing the evidence . . . even where the comment is not in the direct context of the termination and even if uttered by one other than the formal decision maker, provided that the individual is in a position to influence the decision."[32] However, post-Reeves, in Palasota v. Haggar Clothing Co., we held that "so long as remarks are not the only evidence of pretext, they are probative of discriminatory intent."[33] Here, the district court held that the comments were not probative because they were the only evidence of pretext. As determined in the foregoing analysis, we agree that Brown's comments are indeed the only evidence of pretext, and as such, they are not probative.

IV.

For the foregoing reasons, we agree with the district court that Bugos failed to present a genuine issue of material fact as to pretext. Because Brown's workplace comments are the only circumstantial evidence of pretext, and, standing alone, they are not probative, we affirm the district court's grant of summary judgment.

AFFIRMED.

---

[31] Palasota v. Haggar Clothing Co., 342 F.3d 569, 578 (5th Cir. 2003).

[32] Id.

[33] Id. at 577 (emphasis added).