United States Court of Appeals,

Fifth Circuit.

No. 96-60884

Summary Calendar.

Mary MURRAY, Plaintiff-Appellant,

v.

RED KAP INDUSTRIES, INC., Defendant-Appellee.

Oct. 9, 1997.

Appeal from the United States District Court for the Northern District of Mississippi.

Before DAVIS, EMILIO M. GARZA and STEWART, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Mary Murray sued Red Kap Industries, Inc. ("Red Kap") for violating the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.,* by discharging her after she had missed eight days of work due to a respiratory tract infection. After Murray presented her case in chief to the jury, Red Kap moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. The district court found that Murray had failed to produce sufficient proof that she suffered from a "serious health condition" during the second week of her illness, and thus granted the motion. We affirm.

I

Mary Murray worked as a machine operator for Red Kap for eleven years, sewing pants. On Sunday, March 19, 1995, Murray became ill with an upper and lower respiratory tract infection. She did not go to work on Monday, and did not notify her

1

supervisor, Mary Beth West, that she was ill. On Tuesday, Murray visited the emergency room at a local hospital where a doctor gave her antibiotics and instructed her to contact her personal physician, Dr. William Rogers. Murray then scheduled an appointment with Dr. Rogers on Friday. Also that afternoon, Murray informed West of her visit to the emergency room and that she had a doctor's appointment in a few days.

On Friday, Dr. Rogers prescribed a corticosteroid to supplement Murray's antibiotics and asked her to call his office the following Monday. Dr. Rogers then provided Murray with a work release excusing her absence from Monday, March 20 to Friday, March 24 ("the first week") but wrote on the release that she would be able to return to work on Monday, March 27. Immediately after seeing Dr. Rogers, Murray visited Red Kap and gave the work release to West. However, contrary to Dr. Rogers' written statement that she could resume employment on Monday, Murray told West that she would only return to Red Kap when she no longer felt sick.

On Monday, March 27, Murray contacted Dr. Rogers' office and informed someone there that she was "feeling better." However, Murray did not return to work. Rather, she remained at home from Monday through Thursday of that week ("the second week"). During this period, she did not notify West of her condition or seek further medical assistance. On Wednesday, Red Kap terminated Murray for violating employee policy by being absent at work for three consecutive days without notifying her supervisor. On Friday, a relative called Murray and mentioned that she had heard

2

that Murray had quit her job. Shortly afterwards, Murray went to Red Kap to talk to West and learned that she had been fired.

Subsequently, Murray sued Red Kap, alleging that she suffered from a serious medical condition from March 19 through March 29 that rendered her unable to work, and that Red Kap violated the FMLA when it terminated her. Red Kap then moved for summary judgment, which the district court denied. At trial, Dr. Rogers confirmed that Murray had a lower and upper respiratory tract infection and testified that a one-week period of convalescence after her illness would be reasonable. However, during her testimony, Murray conceded that she had not contacted West during the second week until Friday, that she knew it was her responsibility to tell West if she had to miss work, and that she was aware that three consecutive unexplained absences would normally lead to dismissal.

After hearing and seeing Murray's evidence, the district court found that Murray had failed to show that she had a "serious health condition" during the second week of her illness, and granted Red Kap's motion for judgment as a matter of law.

II

On appeal, Murray contends that the district court erred in granting judgment as a matter of law on her FMLA claims in light of the substantial evidence in the record demonstrating that she suffered from a serious health condition during the second week. We review *de novo* the district court's decision to grant a motion for judgment as a matter of law pursuant to Rule 50(a), applying

3

the same legal standard the court used below. *RTC v. Cramer,* 6 F.3d 1102, 1109 (5th Cir.1993).

A motion for judgment as a matter of law is appropriate if, after considering the evidence presented and viewing all reasonable inferences in the light most favorable to the nonmovant, the facts and inferences point so strongly in favor of the movant that a rational jury could not arrive at a contrary verdict. *London v. MAC Corp. of Am.,* 44 F.3d 316, 318 (5th Cir.), *cert. denied,* --- U.S. ----, 116 S.Ct. 99, 133 L.Ed.2d 53 (1995). If there is substantial evidence of such quality and weight that reasonable and fair-minded jurors might reach a different conclusion, then we will conclude that the district court erred in granting the motion. *Id.*

The FMLA attempts to balance the needs of sick employees against the demands of the workplace by allowing certain employees to take as much as twelve weeks medical leave when they have a "serious health condition that makes [them] unable to perform the functions of [their] position ..." and then, following a qualified absence, to return to the same position or an alternate position with equivalent pay, benefits, and working conditions.[1] 29 U.S.C. § 2612(a)(1); 29 C.F.R. § 825.100. In order to qualify for protection under the FMLA, the employee must provide the employer with proper notice of his intention to take leave. 29 C.F.R. § 825.302.

---

[1]Red Kap does not dispute that Murray was covered by the FMLA and that it had to comply with the act. *See generally* 29 U.S.C. § 2611 (describing what kind of employees are eligible for leave under the FMLA and what kind of employers must abide by the act's requirements).

4

Under authority granted by the FMLA in 29 U.S.C. § 2654, the Department of Labor ("DOL") has issued final regulations for the act.[2] Murray contends she had a "serious health condition" as defined by the particular DOL regulation that deals with "continuing treatment by a health care provider." This regulation states:

(a) For purposes of FMLA, "serious health condition" entitling an employee to FMLA leave means an illness, injury, impairment, or physical or mental condition that involves:

...

(2) Continuing treatment by a health care provider. A serious health condition involving continuing treatment by a health care provider includes ...:

(i) A period of incapacity (i.e., inability to work, attend school or perform regular other daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

(A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or

(B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.114. Thus, under the regulation, where an employee alleges that he has a serious health condition involving continuing treatment by a health care provider, he must first demonstrate a period of incapacity (i.e., the inability to work) for at least

---

[2]Murray's FMLA claims arose more than a month after the final regulations began to apply. Murray became sick on March 19, 1995; the final regulations took effect on February 6, 1995.

four consecutive days. Next, he must show that he received subsequent treatment or had a period of incapacity, in which he was either seen at least two times by a health care provider (or a qualified provider of health care services) or obtained a regimen of continuing treatment under the supervision of a health care provider.

In applying this regulatory test, we note that the district court assumed that Murray was unable to work during the first week, that is, she had a period of incapacity from March 20 to March 24 (and, on appeal, Red Kap appears to concede the point). The preliminary question, then, becomes whether this initial period of incapacity includes the period from the first day of the second week to the day Murray was fired, that is, the period from March 27 to March 29 (or, alternatively, whether the period from the first day of the second week to the day Murray was fired is a separate and independent period of incapacity). If the answer to this question is affirmative, then the issue is whether the relevant period of incapacity meets the requirements of either § 825.114(a)(2)(i)(A) or (B). If the answer to the question is negative, then the issue is whether Murray received subsequent treatment satisfying the requirements of § 825.114(a)(2)(i)(A) or (B).

As a threshold matter, Murray can defeat Red Kap's motion for judgment as a matter of law if she presents proof that March 27 to March 29 was at least part of a period of incapacity for her or, in other words, that she was unable to work during these three days.

6

In this regard, Murray points to her testimony as well as that of Dr. Rogers. For instance, Murray testified that Dr. Rogers told her that "he didn't want me working in no plant long as I" was "out of breath and winded...." Murray also stated that she informed West that Dr. Rogers told her not to work as long as she was weak, and that she advised West on Friday, March 24 that "if I was still sick[,] I wasn't coming to work." Finally, Murray claimed that she was convalescing at home from Monday to Thursday of the second week. However, this evidence is all immaterial, conclusory, and/or hearsay. Also, it is highly doubtful that Dr. Rogers told Murray not to return to work as long as she felt weak given the fact that he gave her a written release stating that she could return to Red Kap the following business day. Moreover, Murray's supposed comment to West on Friday of the first week about not coming to work while she was unwell seems somewhat beside the point. According to Murray herself, West (presumably because of Dr. Rogers' statement in the work release) "was steady telling me, I'll see you Monday." In short, Murray's testimony here does little, if anything, to help show that her absence from work during the period from March 27 to March 29 was *necessary*. *See Brannon v. OshKosh B'Gosh, Inc.*, 897 F.Supp. 1028, 1037 (M.D.Tenn.1995) (holding that plaintiff's testimony that she was "too sick to work" is insufficient to show that she was unable to return to work).

Next, Murray notes that Dr. Rogers testified that she "was having significant respiratory problems" and "needed to be off work until she was no longer short of breath." Murray also points out

7

that Dr. Rogers stated that it would have been "reasonable" for her to have taken a week off for convalescence following her Friday, March 24 appointment, and that Dr. Rogers, at an appointment the Tuesday after the second week, wrote in his notes that his "IMPRESSION" was that Murray had a "[l]ower respiratory tract infection, almost had pneumonia which has cleared." However, this evidence is largely irrelevant in light of the fact that, at the Friday appointment, Dr. Rogers gave Murray a work release stating that she "is able to return to work ... on 3/27/95," that is, on Monday of the second week. *See Price v. Marathon Cheese Corp.*, 119 F.3d 330, 335 (5th Cir.1997) (holding that, given doctor's description of plaintiff's manifestation of carpal tunnel syndrome as a "mild to moderate" impairment and his testimony that her condition was not severe enough to "tak[e] her off work altogether," plaintiff's alleged disability did not rise to the level of a "serious health condition" for purposes of the FMLA). In addition, Murray called Dr. Rogers on that Monday and told him that she was feeling better, and, at no time during the second week, did Murray seek any additional medical treatment. Lastly, Murray did not bother to contact West to tell her why she was staying home until Friday of the second week. During this period, West had no information about why Murray was absent, other than Murray's statement the previous Friday about not coming in until she felt well. In fact, the only reason that Murray even went into work on Friday was because she thought that she had been fired.

Given this evidence, we determine that no rational jury would

8

believe that Murray was unable to work during the period from March 27 to March 29. *See Price,* 119 F.3d at 335-36 (affirming district court's grant of judgment as a matter of law in favor of employer where there was a dearth of evidence that fired employee with manifestation of carpal tunnel syndrome was actually incapacitated during her absence from work). Hence, March 27 to March 29 was not a period of incapacity or part of such a period.

The next issue, then, is whether Murray can offer proof that she received "subsequent treatment" during the period from March 27 to March 29 that meets the requirements of either § 825.114(a)(2)(i)(A) or (B). She cannot. The record is clear that, during the second week, Murray did not have any treatment from a health care provider or qualified provider of health care services. In fact, she did not even return to Dr. Rogers for a follow-up visit until April 4, 1995.

Therefore, we discern no way that a rational jury could determine that Murray had a serious health condition entitling her to FMLA leave during the period from March 27 to March 29. Accordingly, the district court did not err in granting Red Kap's motion for judgment as a matter of law pursuant to Rule 50(a).

III

For the foregoing reasons, we AFFIRM the judgment of the district court.