Terri L. COLE Plaintiff,

v.

**SISTERS OF CHARITY OF THE IN-CARNATE WORD, d/b/a St. Elizabeth Hospital, Defendant,**

No. CIV. A. 198CV1676.

United States District Court,
E.D. Texas,
Beaumont Division.

Sept. 20, 1999.

David T. Lopez, Houston, TX, for Plaintiff.

Barbara Louise Johnson, Jennifer A. Powell, Wickliff & Hall, Austin, TX, for Defendant.

## MEMORANDUM OPINION

COBB, District Judge.

Before this Court is the Defendant's Motion for Summary Judgment. Plaintiff was a respiratory therapist who worked at St. Elizabeth Hospital which is operated by the Defendant Sisters of Charity of the Incarnate Word. Before being fired, she worked in the Cardiovascular Intensive Care Unit, (the "CVICU"), where she was part of a pilot nursing program which changed staffing assignments and procedures. It is plaintiff's claim that she was terminated in part because of complaints made to her supervisors that the program resulted in substandard patient care. Defendant claims she was fired for abandoning patients and failing to follow hospital policy. Defendant admits plaintiff complained to her supervisors about the program, but denies plaintiff made complaints regarding the level patient care or working conditions.

For the reasons stated below, this Court dismisses plaintiff's claims under section 161.134(a) of the Texas Health and Safety Code as time barred and grants summary judgment as to the remaining claims.

SUMMARY JUDGMENT BURDEN

Summary Judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED R. CIV.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Olabisiomotosho v. City of Houston,* 185 F.3d 521 (5th Cir. 1999). The proper method after consulting the applicable law in order to ascertain the material factual issues, is to view the facts bearing on those issues in the light most favorable to the nonmovant. *See King v. Chide,* 974 F.2d 653, 656 (5th Cir.1992). Factual controversies are resolved in favor of the nonmoving party only when an actual controversy · exists,

that is, when both parties have submitted evidence of contradictory facts. *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th cir.1995). Conclusory allegations, speculation, and unsubstantiated assertions are not evidence. *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir.1996).

## A. SECTION 161.134(A) OF THE TEXAS HEALTH AND SAFETY CODE

■ Plaintiff claims the Defendant fired her in violation of section 161.134(a) of the Texas Health and Safety Code. That particular section is an exception to the employment at will doctrine and provides:

> A hospital, mental health facility, or treatment facility may not suspend or terminate the employment of or discipline or otherwise discriminate against an employee for reporting to the employee's supervisor, an administrator of the facility, a state regulatory agency, or a law enforcement agency a violation of law, including a violation of this chapter, a rule adopted under this chapter, or a rule adopted by the Texas Board of Mental Health and Mental Retardation, the Texas Board of Health, or the Texas Commission on Alcohol and Drug Abuse.

TEX. HEALTH & SAFETY CODE § 161.134(a) (Vernon 1992). While the statute prohibits retaliation against employees who make complaints, it also requires claims to be brought within 180 days "after the date the alleged violation occurred or was discovered by the employee through the use of reasonable diligence." TEX. HEALTH & SAFETY CODE § 161.134(h). Plaintiff's alleged violation occurred when the plaintiff was terminated. Defendant's Summary Judgment evidence shows that at the time of her termination, plaintiff believed she was being fired for her complaints. In her deposition, plaintiff stated: "I felt like I had gone to my supervisors with the problem, and the recourse I got from that was termination." (Plaintiff's deposition, p. 252, lines 9–11). Plaintiff was informed of her termination on June 20, 1996 but waited until June 15, 1998 to file her original complaint.

In its response, Plaintiff argues that the statute of limitations will not run until plaintiff has evidence that a law was violated. In a motion to compel which is pending before this court, Plaintiff seeks patient complaint documents which plaintiff claims will establish that there was a violation of law which the plaintiff independently reported. Any such documents, while relevant to the plaintiff's credibility at trial, do not save this cause of action from the limitations period set out in section 161.134(h) as the statutory intent is to prohibit retaliation based on the employee's complaints, not the patients' complaints. The fact that patients complained has no bearing on the issues of whether nor when the plaintiff suffered retaliation.

The alleged violation occurred when the plaintiff was fired, not when plaintiff proves a that a law was violated. Since Plaintiff failed to file within the 180 days, her claim is time barred under section 161.134(a).

## B. FAMILY AND MEDICAL LEAVE ACT

Plaintiff claims she was denied leave to which she was entitled under the Family and Medical Leave Act [FMLA] 29 U.S.C. § 2612(a)(1) (1999), because she had a serious health condition.. Plaintiff also claims she suffered retaliation for attempting to exercise those rights.

Under the FMLA, employees are entitled to leave for (1) the birth of a child; (2) the adoption of a child; (3) to care for certain family members who have a serious health condition; or (4) if the employee has "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612. The term "serious health condition" is defined under 29 U.S.C. § 2611(11) as an illness, injury, impairment, or physical or mental condition that involves inpatient care in a hospital ... or

continuing treatment by a health care provider. Since Plaintiff did not present evidence or argue that she received inpatient care, in order to prevail on her FMLA claim, she must have had a serious health condition that involved continuing treatment by a health care provider.

The Code of Federal Regulations (C.F.R.) provides further guidance on what constitutes a serious health condition that involves continuing treatment:

(a) For the purposes of FMLA, "serious health condition" entitling an employee to FMLA leave means an illness, injury, impairment, or physical or mental condition that involves:

. . .

(2) Continuing treatment by a health care provider. A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:

(i) A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

(A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or

(B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

. . .

(iii) Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:

(A) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;

(B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and

(C) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

29 C.F.R. § 825.114 (1998). Plaintiff presents no evidence of three consecutive days of incapacity and is thus left with (iii), that her stress constituted a chronic serious health condition.

The Congressional intent in enacting FMLA was to allow employees to take reasonable leave to deal with serious health conditions in which continuing treatment or inpatient care is involved. *Ozolins v. Northwood–Kensett Community School Dist.*, 40 F.Supp.2d 1055, 1064 (N.D.Iowa 1999). The FMLA itself indicates that there was inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods. 29 U.S.C. § 2601(a)(4). Congress did not intend to provide coverage for minor health conditions which would be covered by an employer's sick leave policy. *Boyce v. New York City Mission Society*, 963 F.Supp. 290, 299 (S.D.N.Y.1997) (citing H.R.Rep. No. 8, 103rd Cong., 1st Sess., pt. 1 at 28). "The FMLA attempts to balance the needs of sick employees against the demands of the workplace by allowing certain employees to take as much as twelve weeks medical leave when they have a 'serious health condition that makes [them] unable to perform the functions of [their] position . . .' and then, following a qualified absence, to return to the same position or an alternate position with equivalent pay, benefits, and working conditions." *Murray v. Red Kap Indus.*, 124 F.3d 695, 697 (5th Cir.1997) (citing 29 U.S.C. § 2612(a)(1) and 29 C.F.R. § 825.100).

Common to each of the definitions under the regulations is the requirement of incapacity, that is, the inability to work or perform regular daily activities. The Fifth Circuit has essentially made this a prerequisite for recovery under this section of the FMLA. *Murray,* 124 F.3d at 698 (requiring a period of incapacity to establish a serious health condition for a patient receiving continuing treatment).

Moreover, the plain language of the statute requires that the person seeking protection under FMLA be unable to perform the functions of her position. 29 U.S.C. § 2612(a)(1)(D). Consistent with this, courts have focused on the ability to work in determining whether a person is incapacitated for the purposes of the FMLA. In *Price v. Marathon,* 119 F.3d 330 (5th Cir.1997), plaintiff alleged she was entitled to leave under FMLA because she suffered from carpal tunnel syndrome. However, plaintiff's "mild to moderate impairment" did not prevent her from going to work and she was able to perform all of her job functions. *Id.* at 335. In *Brannon v. OshKosh B'Gosh, Inc.,* 897 F.Supp. 1028, 1037 (M.D.Tenn.1995), the district court held that plaintiff's testimony that she was "too sick to work" was insufficient to show that she was unable to return to work. The possibility that a person can work removes FMLA protection. *See Murray,* 124 F.3d at 699 (finding plaintiff who suffered stress from managing father's probate estate could still perform the activities of daily living was actually able to work was not incapacitated for the purposes of FMLA); *see also Hodgens v. General Dynamics Corp.,* 963 F.Supp. 102, 106 (D.R.I.1997) (finding plaintiff was not incapacitated where plaintiff could still perform the functions and duties of his job).

■ While the plaintiff in the present case suffered stress and ultimately a day of illness, there is no evidence that she was unable to perform the functions of the job. In fact, in her own deposition, plaintiff admits that the condition she suffered from never prevented her from performing regular life functions nor prevented her from working. (Plaintiff's deposition, p. 276–77). Further, while plaintiff's doctor advised her to seek a transfer off of the project, the doctor never advised her to quit her job. (Plaintiff's deposition, p. 278). Finally, in a memo dated June 12, 1996 written by the plaintiff to her supervisor, Shelly Cooper, plaintiff requested a transfer but acknowledged that she could continue working in the CVICU until her rotation was finished. (Defendant's Summary Judgment Exhibit G).

By her own admissions, Plaintiff was able to perform the functions of a respiratory therapist and there is no indication that her stress caused her any period of incapacity as it has been defined-even on the day before her termination. While it is true that she fell ill and had to leave work, this is not evidence of the inability to work as required by the FMLA. Thus, she does not meet the requirements for having a serious health condition and is not eligible for FMLA leave. Consequently, Defendant cannot be held liable for a retaliation claim based on the FMLA.

### C. Intentional Infliction of Emotional Distress

Plaintiff also asserts a claim for intentional infliction of emotional distress. Plaintiff claims she was forced "to work in conditions which defendant knew plaintiff regarded as inimical to patients' welfare, as well as to her own professional and ethical standards, and, further, attempting to force the plaintiff to continue her work, including responsibility for critically ill patients, while the plaintiff herself was unable to perform." (Plaintiff's Preliminary Response to Summary Judgment).

■ To recover for the tort of intentional infliction of emotional distress, a plaintiff must prove that: (1) the defendant acted intentionally or recklessly; (2) the conduct was "extreme and outrageous"; (3) the defendant's actions caused the

plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex.1993).

 The second element of the tort requires the conduct to be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Twyman,* 855 S.W.2d at 621 (citing RESTATEMENT (SECOND) OF TORTS § 46, cmt. d). Whether the defendant's conduct is so extreme and outrageous as to permit recovery is initially a question for the court to decide. *Wornick Co. v. Casas,* 856 S.W.2d 732, 734 (Tex.1993).

Mere employment disputes do not constitute extreme and outrageous conduct. *MacArthur v. University of Texas Health Center,* 45 F.3d 890, 898 (5th Cir.1995) (finding no extreme and outrageous conduct where the supervisor lost control, was rude, and overreacted in reporting the employee's mistakes to her supervisor); *see also Johnson v. Merrell Dow Pharmaceuticals, Inc.,* 965 F.2d 31, 33 (5th Cir.1992) (finding no extreme and outrageous conduct where manager constantly criticized and threatened employee with termination and even told his current employer that he was under psychiatric care). Far more egregious conduct is required to reach the extreme and outrageous standard in the employment context. In *Dean v. Ford Motor Credit Co.,* 885 F.2d 300 (5th Cir.1989), the Fifth Circuit held that the supervisor's act of placing checks in employee's purse and accusing her of stealing took the act "beyond the realm of an ordinary employment dispute." *Id.* at 307. Nor can plaintiff complain that her discharge constituted extreme and outrageous behavior. The mere fact of termination of employment, even if the termination was wrongful, does not constitute extreme and outrageous behavior. *Southwestern Bell Mobile Systems, Inc. v. Franco,* 971 S.W.2d 52, 54 (Tex.1998).

In the same motion to compel mentioned above, Plaintiff claims patient complaint forms will establish the level of duress which the plaintiff suffered and help prove that there was a violation of law. However, even if the defendant's conduct as to the patients violated some level of care, was malicious, or even criminal, that, standing alone does not constitute extreme and outrageous conduct for the purposes of the tort. *See F.J. Brewerton v. Dalrymple,* 997 S.W.2d 212 (Tex.1999) (*citing* RESTATEMENT (SECOND) OF TORTS § 46, cmt. d). Plaintiff has not plead any action on the part of the defendant which might meet the extreme and outrageous standard.

For the above mentioned reasons, Defendant's Motion is granted.