**Sandra WHEELER, Plaintiff,**

v.

**PIONEER DEVELOPMENTAL SERVICES, INC. and "Jane Doe", Plan Administrator of Pioneer Developmental Services, Inc. Benefit Plans, Defendant.**

**No. CIV.A.02–30159–MAP.**

United States District Court,
D. Massachusetts.

Dec. 8, 2004.

James F. Donnelly, Lyon, Ferriter & Fitzpatrick, Holyoke, for Pioneer Developmental Services, Inc., Jane Doe, Defendants.

Hugh D. Heisler, Heisler, Feldman & McCormick, PC, Springfield, for Sandra Wheeler, Plaintiff.

Robert S. Murphy, Jr., Bacon & Wilson, P.C., Springfield, for Pioneer Developmental Services, Inc., Jane Doe, Defendants.

Patti A. Prunhuber, Western Mass. Legal Services, Northampton, for Sandra Wheeler, Plaintiff.

### MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S CROSS–MOTION FOR PARTIAL SUMMARY JUDGMENT (Docket Nos. 22 and 26)

PONSOR, District Judge.

### I.  INTRODUCTION

Plaintiff Sandra Wheeler ("Wheeler") has brought this action against her former employer Pioneer Development Services, Inc. ("Pioneer") claiming that Pioneer wrongfully discharged her from her position. Specifically, Wheeler's complaint charges violations of the Family Medical Leave Act ("FMLA"), ERISA violations, breach of both contractual and fiduciary duties, conversion, and violation of Massachusetts state law.

Following discovery, Wheeler has moved for partial summary judgment on Count I, arguing that on the undisputed facts, no reasonable jury could fail to find a violation of the FMLA. Pioneer has opposed Wheeler's motion and responded with a motion for partial summary judgment of its own as to Wheeler's FMLA claim.

As will be seen, the critical point of disagreement between the parties is whether Wheeler gave proper notice to Pioneer of her need for FMLA leave, and whether her medical condition qualified for medical leave under the statute. As the discussion will show, the undisputed facts permit no other conclusion but that the plaintiff suffered a violation of her rights under the FMLA. Although courts seldom allow plaintiffs' motions for summary judgment, the facts of this case establish a violation of the FMLA as a matter of law and make a trial on the liability aspect of this claim unnecessary.

### II.  STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A "genuine" issue is one that reasonably could be resolved in favor of either party, and a material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must view all evidence in the light most favorable to the nonmoving party, "drawing all reasonable inferences in the party's

favor." *Thomas v. Eastman Kodak Co.,* 183 F.3d 38, 42 (1st Cir.1999), *cert. denied,* 528 U.S. 1161, 120 S.Ct. 1174, 145 L.Ed.2d 1082 (2000).

Once the moving party has asserted that no genuine issue of material fact exists, the burden is on the opposing party to point to specific facts demonstrating that there is, indeed, a trial worthy issue. *National Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir.1995), *cert. denied,* 515 U.S. 1103, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995). Not every genuine factual conflict, of course, necessitates a trial. "It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." *Parrilla–Burgos v. Hernandez–Rivera,* 108 F.3d 445, 448 (1st Cir.1997) (citations omitted).

## III. *FACTUAL BACKGROUND*

Viewed in the light most favorable to the defendant, the relevant background to the motions may be summarized a follows.

Pioneer, defendant in this case, provides social and training services to developmentally disabled adults. Wheeler, the plaintiff, worked for Pioneer as a case manager and/or direct case worker from March 16, 1998 until her discharge on December 26, 2001.

The events leading up to plaintiff's discharge unfolded in the following manner. On December 7, 2001, having promised to take one of Pioneer's clients home from the office, Wheeler failed to follow through, leaving the supervisor with a disabled client. Wheeler explained to her supervisor, however, that she had to leave to pick up her children. On December 10, 2001, Wheeler chose not to follow her supervisor's suggestion that she encourage one of Pioneer's clients to perform some work around the office to make some mon-

ey. As a result, both Wheeler and the client remained idle for the next hour. At that point, Pioneer considered Wheeler's behavior to constitute willful insubordination and later issued a reprimand in the form of a so-called "Disciplinary Action Letter" on December 13, 2001. Although office protocol required Wheeler to sign the Disciplinary Letter, she apparently refused. Wheeler was placed on thirty-day probationary status based on this reprimand.

Wheeler began to feel sick around December 10, 2001. Following the onset of her symptoms, Wheeler asked her supervisor, an individual named Michaud, for permission to leave, but Michaud refused to allow it.

The following day, Wheeler consulted her physician, Dr. Peter Siersma ("Siersma"). Siersma had been Wheeler's personal doctor since 1992. During the office visit, Siersma observed Wheeler coughing and experiencing hot and cold sweats and an upper respiratory infection. These observations led the doctor to conclude that Wheeler suffered from a condition characterized as a "viral infection in a smoker" or "viral infection with attendant symptoms." Although he did not mention it in Wheeler's medical records, at deposition Siersma testified that it would have been "counterproductive for [Wheeler] to work at her job until she was feeling better or was clinically better or was seen and documented to be better." (Docket No. 24 at 2).

Medical records merely indicate that on December 11 Siersma prescribed "symptomatic care" to Wheeler, though he later testified that he advised Wheeler to stay home from work, get plenty of rest and treat her symptoms with fluids and over-the-counter medications. Siersma also testified that he felt concerned that Wheel-

er needed rest in order to completely recover from her illness, but he again failed to record that information in Wheeler's medical records.

Wheeler continued to request medical leave. She explained that she had not been feeling well on several occasions in December. When Wheeler's supervisors Michaud and another party named Taylor ("Taylor") denied all of Wheeler's requests on December 13, 2001, Wheeler telephoned Siersma's office and asked for a note confirming her need for a leave of absence. In response to Wheeler's request, Siersma wrote a note on the same date, which simply indicated that Wheeler needed "LOA × 4." [1] The doctor testified at his deposition that at that time, he believed that damage done to Wheeler's bronchi and pulmonary parenchyma would take three to four weeks to resolve, and so he wrote Wheeler a note for the maximum amount of time that he thought Wheeler needed to recover from her viral illness.

Wheeler picked up the note from Siersma's office and handed it to Taylor the next day, December 14, 2001. Pioneer apparently considered the Siersma note to constitute a request for medical leave under the Pioneer employee manual. Although Wheeler said that she felt "sick and tired" as she handed in the note, Taylor understood that Wheeler requested a medical leave, upon the advice of her physician, for a period of four weeks. (Docket No. 28 at 3). Upon receiving the note, Taylor indicated that she would need more information to determine if Wheeler truly qualified for leave. Having delivered the note to Taylor, Wheeler left work, went home, and remained completely incapacitated from December 14, 2001 through December 19, 2001.

On December 19, 2001, Wheeler received a letter from Pioneer dated December 17, 2001. The letter requested that Wheeler submit additional information from her doctor no later than December 20, 2001, the next day, and instructed her to sign a release to allow Pioneer to contact Wheeler's physician directly. Wheeler took the letter to Siersma's office the same day, let Siersma's receptionist make a copy, and signed the requested medical release form. The receptionist assured Wheeler that the doctor would submit all the necessary information to Pioneer.

On the same day, a person from Siersma's office telephoned Pioneer and explained that because Siersma had a busy schedule, he could not comply with Pioneer's deadline of December 20th. The person assured Pioneer, however, that Siersma would fax the requested information to Pioneer by December 24, 2001, the day before the Christmas holiday. The following day, December 20, 2001, Siersma reviewed the job description for Wheeler that Pioneer had provided and dictated additional information that Pioneer had requested. Siersma stated in his letter that, having reviewed Wheeler's job description, he concluded that it was counter-productive for Wheeler to continue with her duties, since the time demands of Wheeler's job would impede her recovery.

Siersma uses a transcriptionist to type his dictation. Except in cases of emergency, the transcriptionist typically requires two to three days to return Siersma's dictation for his signature. Siersma did not consider administrative requests like Pioneer's an emergency, and, partly as a result of the Christmas holiday, Siersma did not receive the letter back for signature until December 26, 2001. When Pioneer did not receive medical certification on December 20, 2001, it did not instruct any-

1. This notation apparently indicated a leave     of absence for a period of four weeks.

body to contact Wheeler and explain that Pioneer had not yet received the required information. Nor did Pioneer contact Siersma after it learned that Siersma could not meet the December 20th deadline.

Wheeler's health continued to worsen. On December 26, 2001, Wheeler saw Dr. Muellner ("Muellner"), another physician in Siersma's office, who prescribed her the antibiotic Doxycycline. Following the office visit, Wheeler filled the prescription at a drug store and began taking it the same day.

On the same day, December 26, 2001, Pioneer terminated Wheeler for failure to comply with the deadline for submitting additional medical information. Wheeler's supervisors, Taylor and Leopold ("Leopold") prepared and sent Wheeler a Disciplinary Action Statement with a cover letter. The letter explained that Pioneer considered Wheeler's failure to provide a letter from her physician by the December 20th deadline willful insubordination. Moreover, as Pioneer did not receive the additional medical information, it also considered Wheeler's absence from work unauthorized.

As noted above, through the period starting December 14, 2001 and for thirty days thereafter plaintiff was on probationary status based on the December 13, 2001 Disciplinary Action letter. Aside from her failure to provide additional medical information by December 20, 2001, Wheeler did not commit any other disciplinary infraction between December 14, 2001 and the date of her discharge on December 26, 2001. In fact, Pioneer did not plan to terminate Wheeler, and both Taylor and Leopold stated that Pioneer probably would not have terminated Wheeler's employment if Pioneer had received the requested additional medical information by December 20, 2001.

Having received Siersma's letter on December 26, 2001, Pioneer did not contact Wheeler to explain that Siersma's letter had insufficient information. Nor did Pioneer ask Wheeler to seek a second opinion at Pioneer's expense, something that Wheeler would have willingly done.

In addition to her full-time employment with Pioneer, Wheeler also worked part-time as a bartender at an establishment called Peanut Bar. Wheeler's schedule at the Bar normally included the hours of six in the afternoon through one in the morning on Wednesdays, and noon through six in the afternoon on Sundays. Although Wheeler could not remember how many hours she worked at the Bar in December of 2001, she did recall working there between December 14, 2001 and January of 2002. In particular, Wheeler apparently worked at the Bar for sixteen hours the week of December 30, 2001 through January 5, 2002.

After her discharge, Wheeler remained ill until January 10, 2002. Once she recovered, she brought this action against Pioneer. As noted, following discovery, Wheeler has moved for partial summary judgment on Count I of her complaint, alleging violation of the Family and Medical Leave Act. For the reasons set forth below, the court will allow her motion and deny defendant's cross-motion.

## IV. THE STATUTORY FRAMEWORK

### A. Introduction

Congress enacted the Family Medical Leave Act ("FMLA") "to help working men and women balance the conflicting demands of work and personal life." *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir.1998)(citing *Price v. City of Fort Wayne*, 117 F.3d 1022, 1024 (7th Cir.1997)). In enacting the FMLA, Congress recognized that "there will be times

in a person's life when that person is incapable of performing her duties for medical reasons." *Id.* At the same time, Congress sought to accomplish its purposes in a manner that "accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b)(3) (2004). Believing that "there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods," 29 U.S.C. § 2601(a)(4) (2004), Congress designed a statutory scheme to "balance the demands of the workplace with the needs of families" and "to entitle employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(1) (2004); *Hodgens,* 144 F.3d at 159.

The FMLA provides certain qualified employees with a number of substantive rights and prohibits employers from discriminating against employees who have availed themselves of FMLA benefits. The statute provides that eligible employees "shall be entitled to a total of 12 workweeks of leave during any 12–month period." 29 U.S.C. § 2612(a)(1) (2004). This entitlement "is essentially prescriptive, 'set[ting] substantive floors' for conduct by employers, and creating 'entitlements' for employees." *Hodgens,* 144 F.3d at 159 (quoting from *Diaz v. Fort Wayne Foundry Corp.,* 131 F.3d 711, 712–13 (7th Cir.1997)). Any employee who qualifies for and takes FMLA leave "shall be entitled, on return from such leave, to be restored to the same position held before the leave commenced, or to an equivalent position with equivalent conditions of employment." 29 U.S.C. § 2614(1)(A), (B) (2004).

The FMLA also forbids employers to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a)(2) (2004). Finally, the FMLA makes it "unlawful for any employer to interfere with, restrain, or deny... any rights provided" by the FMLA, 29 U.S.C. § 2615(a)(1) (2004), and makes employers who violate the FMLA "liable to any eligible employee affected...." 29 U.S.C. § 2617(a)(2004).

■ To prevail on an FMLA claim, an aggrieved worker must establish five things. First, the worker must establish that she fit the definition of an "eligible employee." *See* 29 U.S.C. § 2612(a)(1) (2004). Second, the worker must establish that she worked for an employer covered by the Act. *See* 29 U.S.C. § 2615(a)(1) (2004); 29 U.S.C. § 2617(a)(1). Third, the worker has to show that she qualified for FMLA benefits for one of four statutory reasons. *See* 29 U.S.C. § 2612(a)(1) (2004). Fourth, the worker has to prove that she gave her employer appropriate notice. *See* 29 U.S.C. § 2612(e) (2004); 29 C.F.R. 825.302. *See also* 29 C.F.R. 825.303 (notice requirements for unforeseeable leave). Finally, the worker has to establish that the employer denied her benefits to which the FMLA entitled her. *See* 29 U.S.C. § 2612(a)(1) (2004). *See also Cavin v. Honda of America Mfg. Inc.,* 346 F.3d 713, 716 (6th Cir.2003)(recognizing these five factors).

B. *"Eligible employee" and employer.*

A worker qualifies as an "eligible employee" within the meaning of the FMLA if she has been employed with the employer for at least twelve months and worked for at least 1,250 hours during the previous twelve-month period. 29 U.S.C. § 2611(2)(A) (2004). An employer becomes bound by the FMLA if it engages in commerce, or in any industry or activity affecting commerce and employs fifty or more employees for each working day during each of twenty or more calendar work weeks in the current or previous calendar year. 29 U.S.C. § 2611(4) (2004).

### C. Entitlement to leave.

An eligible employee can ask for FMLA leave for one or more statutory reasons. One of those reasons is the employee's own "serious health condition that makes the employee unable to perform the functions of the position of [the] employer." 29 U.S.C. § 2612(a)(1)(D) (2004).

An eligible employee has a "serious health condition" if she has an illness that involves either inpatient care or continuing treatment by a health care provider. 29 U.S.C. § 2611(11) (2004); 29 C.F.R. 825.114. Although the FMLA requires an employee to have an "illness" to qualify for medical leave, the FMLA itself does not define qualifying illnesses. Under its power to "prescribe such regulations as are necessary to carry out" the provisions of the FMLA, 29 U.S.C. § 2654 (2004), the Secretary of Labor ("Secretary") has adopted regulations describing what types of illnesses do not normally qualify for FMLA leave benefits. See 29 C.F.R. 825.114(c). The Secretary has determined, for example, that

> [o]rdinarily, unless complications arise, the common cold, the flu, ear aches, upset stomach, minor ulcers, headaches other than migraine, routine dental or orthodontia problems, periodontal disease, etc., are examples of conditions that do not meet the definition of a serious health condition and do not qualify for FMLA leave.

Id. Specifically, with regard to employees with an episode of the flu, some courts have suggested that such employees do not qualify for FMLA leave. See Brannon v. OshKosh B'Gosh, Inc., 897 F.Supp. 1028, 1036 n. 8 (M.D.Tenn.1995). In 1996, however, the Secretary issued an opinion letter specifically stating that, "[i]f, however, any of these conditions [such as flu, which ordinarily does not satisfy the definition] met the regulatory criteria for a serious health

condition, ... then the absence [from work] would be protected by the FMLA.... Complications, per se, need not be present to qualify as a serious health condition if the regulatory ... tests are otherwise met." Miller v. AT & T Corp., 250 F.3d 820, 832 (4th Cir.2001)(quoting from the 1996 opinion letter of the Secretary of Labor)(internal quotations omitted).

In order to qualify for leave, in addition to having an "illness," the employee must also receive in-patient care or continuing treatment from a health care provider. 29 U.S.C. § 2611(11) (2004); 29 C.F.R. 825.114(a). The patient receives "continuing treatment by a health care provider" if the patient's illness involves a period of incapacity that lasts more than three consecutive calendar days and involves medical treatment. 29 C.F.R. 825.114(a)(2)(i). Illness involves a period of incapacity when the patient cannot work "due to the serious health condition, treatment therefor, or recovery therefrom." Id.

To prove incapacity, therefore, an employee must first necessarily prove that her illness made her unable to work for more than three consecutive calendar days. Having established this threshold requirement, the employee may continue to qualify for benefits due to incapacity if she either remains unable to work because of her illness, or receives subsequent treatment. In other words, after the initial three-day period of incapacity, the employee does not have to show that she could not perform any work at all, but only that she could not perform job functions of her own employer and continued to receive treatment for her illness.

The patient receives medical treatment for the purposes of FMLA if she receives treatment two or more times by a health care provider, or receives a single treatment by a health care provider which re-

sults in a "regimen of continuing treatment under the supervision of the health care provider." 29 C.F.R. 825.114(a)(2)(i)(A), (B). For FMLA purposes, "treatment includes examination to determine if a serious health condition exists and evaluation of the condition," and a "regimen of continuing treatment . . . includes a course of prescription medication (*e.g.,* an antibiotic)," but not over-the-counter medications. 29 C.F.R. 825.114(b).

### D. *Notice.*

In addition to having a "serious health condition that makes the employee unable to perform the functions of the position," 29 U.S.C. § 2612(a)(1)(D) (2004), the employee must also give her employer appropriate notice of her need for FMLA leave. 29 U.S.C. § 2612(e)(2) (2004). In general, when the employee can foresee that she will need FMLA leave, she has an obligation to give a thirty-day advance notice to the · employer. 29 U.S.C. § 2612(e)(2)(B) (2004). When the employee cannot foresee that she will need a leave, however, she must still give notice to the employer, but may do so "as soon as practicable· under the facts and circumstances of the particular case." 29 C.F.R. 825.303(a). In general, the employee must "give notice to the employer within no more than one or two working days" after she learns of the need for leave. 29 C.F.R. 825.303(a). The employee can give notice in person, by telephone, or by electronic means. 29 C.F.R. 825.303(b). ·

■ In her notice, the employee does not have to mention the FMLA or specifically assert her rights under the FMLA. 29 C.F.R. 825.303(b). In fact, an employee does not even have to know about her rights under the FMLA. *Stoops v. One Call Communications, Inc.,* 141 F.3d 309, 312 (7th Cir.1998). Instead, the employee may simply "state that leave is needed,"

and the employer will then be "expected to obtain any additional required information through informal means." 29 C.F.R. 825.304(b). Once an employee gives notice, and the circumstances suggest that the employee's request may involve FMLA leave, it becomes the employer's obligation to inquire further in order to determine if the requested leave qualifies for FMLA protection. *See Williams v. Shenango, Inc.,* 986 F.Supp. 309 (W.D.Pa.1997); *Brannon,* 897 F.Supp. at 1028.

The employer has the right under the FMLA to require that the employee support her request for leave with medical certification issued by the employee's health care provider.· 29 U.S.C. § 2613(a) (2004); 29 C.F.R. 825.305(a). To exercise this right, the employer must give a written notice of a requirement for medical certification each time the employer requires it, 29 C.F.R. 825.305(a), and must advise the employee of anticipated consequences of the employee's failure to provide adequate certification, 29 C.F.R. 825.305(d). In general, the employer must request certification at the time the employee gives notice or, in cases of unforeseen leave, within two days after leave commences. 29 C.F.R. 825.305(c). Once requested, the employee must provide a copy of such certification to the employer. 29 U.S.C. § 2613(a) (2004).

When the employee can foresee the need for leave and give a thirty-day notice to the·employer, the employee must provide the requested certification before leave begins. 29 C.F.R. 825.305(b). In other circumstances, the employee must provide certification within the time frame requested by the employer, "(which must allow at least 15 calendar days after the employer's request), unless it is not practicable under the particular circumstances to do so in spite of employee's diligent, good faith efforts." 29 C.F.R. 825.305(b).

■ If the employer finds the provided medical certification incomplete, the employer must advise the employee accordingly and "provide the employee a reasonable opportunity to cure any such deficiency." 29 C.F.R. 825.305(d). Once the employee submits sufficient medical certification, the "employee is entitled to protection under FMLA unless and until there is contrary medical evidence." *Miller v. AT & T,* 60 F.Supp.2d 574, 580 (S.D.W.Va.1999), *aff'd* 250 F.3d 820 (4th Cir.2001).

■ An employer who "has reason to doubt the validity of a medical certification" may, at the employer's expense, require the employee to obtain a second and/or third medical opinion. 29 U.S.C. § 2613(c) (2004); 29 C.F.R. 825.307(a)(2). Pending the results of a second or third opinion, the FMLA provisionally entitles the employee to benefits. 29 C.F.R. 825.307(a)(2). An employer who disagrees with the employee's medical certification but does not require the employee to obtain a second or third opinion, cannot challenge the validity of the certification in subsequent civil proceedings. *Sims v. Alameda–Contra Costa Transit Dist.,* 2 F.Supp.2d 1253, 1260 (N.D.Cal.1998).

### E. *Denial of benefits.*

Finally, to prevail on the FMLA claim, the employee must establish that her employer denied her benefits under the FMLA. 29 U.S.C. § 2612(a)(1) (2004). As previously noted, the FMLA requires employers: (1) to provide eligible employees with a "total of 12 workweeks of leave during any 12–month period," 29 U.S.C. § 2612(a)(1) (2004); (2) to restore the employee to the pre-leave position with the employer, 29 U.S.C. § 2614(a)(1) (2004); and (3) not to "interfere with, restrain, or deny the exercise of" any rights provided under the FMLA, 29 U.S.C. § 2615(a)(1) (2004).

### V.  *DISCUSSION.*

The parties do not dispute that the FMLA applied to Pioneer and that Wheeler fit the definition of "qualifying employee" within the meaning of the FMLA. In other words, no dispute exists that Pioneer employed at least fifty persons or that Wheeler worked for at least 1,250 hours during the previous twelve-month period. It is undisputed, therefore, that the FMLA generally applies to this case as matter of law.

■ Moreover, even viewed in light most favorable to Pioneer, the records establishes beyond dispute that Wheeler had a serious health condition that made her unable to perform functions of her job. As discussed below, the facts show that Wheeler's illness rendered her unable to work more than three consecutive calendar days and required continuing treatment by a health care provider.

Here, the record clearly shows that Wheeler's incapacity derived from an illness. When Siersma, Wheeler's physician, saw Wheeler in his office on December 11, he observed Wheeler in distress. Her symptoms included coughing, experiencing hot and cold sweats, and upper respiratory congestion. Siersma concluded that Wheeler had some sort of viral infection. Although the disease resembled the flu, Siersma could not conclusively determine the source of Wheeler's infection.

Despite the symptoms, Pioneer argued that Wheeler's illness did not constitute a "serious health condition," citing the earlier regulation of the Secretary of Labor excluding the flu and common cold from the definition of a "serious health condition," 29 C.F.R. 825.114(c), and the Fifth Circuit's decision in *Murray v. Red Kap*

*Indus., Inc.,* 124 F.3d 695 (5th Cir.1997), which held that respiratory tract infections could never justify an FMLA leave. This argument, while colorable, is unpersuasive for several reasons.

■ First, as noted above, the Secretary of Labor has issued an opinion letter explaining that the regulation did not intend to exclude employees with flu-like symptoms from FMLA coverage in *all* circumstances. A more sensible rule now governs: if an employee's illness satisfies the substantive regulatory definition of a "serious health condition," infections like the flu will qualify the employee for FMLA leave. *See Miller,* 60 F.Supp.2d at 580.[2]

Second, the facts in *Murray* itself suggest that neither party in that case disputed the fact that Murray qualified for one week's leave under the FMLA as a result of his respiratory infection. The dispute arose out of the employee's unauthorized absence during the second week. Nothing in *Murray* stands for the proposition that respiratory tract infections can *never* qualify for FMLA leave.

Finally, even viewed in the light most favorable to Pioneer, the record clearly confirms that Wheeler's illness incapacitated her for more than three consecutive calendar days. It is undisputed that Wheeler remained away from work between December 14, 2001, and December 19, 2001, a period of over five days. It is further uncontested that she remained completely incapacitated during that period of time. These facts fully satisfy the regulatory requirements of 29 C.F.R. 825.114(a)(2)(i), and no reasonable jury could find otherwise.

The fact that Wheeler worked at another job during the continuation of her leave does not disprove her incapacity. Al-

though the record does not reflect Wheeler's exact hours at the Peanut Bar, it does appear that Wheeler did in fact come to work at the bar for some period between December 14, 2001, and January 5, 2002, and worked for only about sixteen hours the week of December 30, 2001, through January 5, 2002.

From these facts alone, no reasonable fact finder could find that Wheeler's illness did not incapacitate her. First, Wheeler had to prove incapacity—*i.e.,* inability to work due to her illness, 29 C.F.R. 825.114(a)(2)(i)—during the first four days of her illness only.

Equally importantly, Pioneer failed to invoke the statutory remedies available to it if it wished to challenge Wheeler's claim of incapacity. An employer who does not believe that its employee suffers from incapacity due to illness, or otherwise doubts its employee's qualification for FMLA leave, has several statutory and regulatory remedies. First, to ensure that the request is based on a legitimate medical need, the employer may ask the employee to provide medical certification from the employee's health care provider. 29 U.S.C. § 2613 (2004); 29 C.F.R. 825.305. After it receives certification, the employer may then ask the employee to obtain a second and even a third opinion from a different health care provider, including one chosen by the employer. 29 U.S.C. § 2613(c) (2004); 29 C.F.R. 825.307. An employer who chooses not to exercise these rights waives them and is precluded from challenging the propriety of the employee's leave request at a later trial. *See Sims,* 2 F.Supp.2d at 1253. As Pioneer did not ask Wheeler to obtain a second opinion, it cannot question Wheeler's incapacity now.

**2.** It is worth noting that *Murray* is easily distinguishable.

Following her initial period of incapacity, Wheeler also received continuing medical treatment. Wheeler made her first visit to a doctor on December 10, 2001, during the initial days following the onset of her illness. At that visit, Dr. Siersma examined Wheeler in order to determine the cause of her distress and made oral recommendations as to her treatment. As Siersma conducted an "examination to determine if a serious health condition exists and evaluation of that condition," Wheeler's visit qualified as "treatment" for the purposes of the FMLA. 29 C.F.R. 825.114(b).

Not feeling better, Wheeler then made her second visit to Dr. Muellner on December 26, 2001. After an observation, Muellner gave Wheeler a prescription for an antibiotic Doxycycline, which she filled and started using the same day. This visit similarly qualified as "treatment" for the purposes of the FMLA. *See* 29 C.F.R. 825.114(b). As Muellner prescribed Wheeler a course of antibiotics, Wheeler's illness also involved a "regiment of continuing treatment." 29 C.F.R. 825.114(b). Because Wheeler received two treatments by health care providers and adhered to a regimen of continuing treatment, the court must conclude that Wheeler's illness involved continuing treatment by a health care provider as matter of law. *See* 29 C.F.R. 825.114(a)(2).

■ Wheeler's interaction with Taylor on December 14, 2001, provided sufficient statutory notice to Pioneer. Viewed in the light most favorable to Pioneer, the facts clearly establish that on that day, Wheeler handed Taylor, her supervisor, a note from Dr. Siersma, which requested that Wheeler receive "LOA × 4." There can be no

doubt that Taylor understood that Wheeler was asking for a medical leave upon advice of her physician for a period of four weeks. The only reasonable inference to be drawn from these facts is that Wheeler informed Pioneer that she needed medical leave. No more was required under the FMLA. *See* 29 C.F.R. 825.304(b).

Defendant's argument notwithstanding, Siersma was not obligated to consider Wheeler's job duties before he gave her the note. As the court previously explained, an employee does not have to give a written notice to the employer; any notice given in person or over the phone fully complies with the regulatory requirements. 29 C.F.R. 825.303. As neither the FMLA nor regulations promulgated under it require any type of written notice, the court holds that Wheeler did not have to support her request for FMLA leave with a note from her doctor. As Wheeler did not have to submit a note from her doctor, the fact that Siersma might have given her the note based on incomplete information is immaterial.

Having qualified and applied for FMLA leave, Wheeler was entitled to receive it. *Hodgens,* 144 F.3d at 159. When Pioneer discharged Wheeler from her employment for taking the leave, it interfered with her rights under the FMLA.

Pioneer's argument that Wheeler did not comply with Pioneer's request for medical certification does not save it from liability.[3] Pioneer argues that since Wheeler did not foresee that she would need medical leave in this case and did not give Pioneer a thirty-day notice, she had to comply with Pioneer's deadline for submitting additional medical information. *See*

---

**3.** Although it is not necessary to address the issue—because of defendant's clear liability on more fundamental substantive grounds—the facts in this case also suggest that Pioneer

made an untimely request for medical certification and failed adequately to advise Wheeler of consequences of non-compliance with the request. *See* 29 C.F.R. 825.305(c), (d).

29 C.F.R. 825.305(b). As Pioneer requested that Wheeler provide additional information by December 20, 2001, but Wheeler did not provide it until December 26, 2001, Pioneer argues that it could delay the employee's continuation of FMLA leave and discharge her for taking unauthorized leave. *See* 29 C.F.R. 825.311(b).

This argument simply ignores the applicable regulation. Because Wheeler did not foresee the need for leave, Pioneer had to give Wheeler until December 31, 2001, a minimum of *fifteen days*, to comply. *See* 29 C.F.R. 825.305(b); 29 C.F.R. 825.311(b). As Siersma did ultimately provide Pioneer with the additional information on December 26, 2001, and Pioneer did not properly challenge the validity of the certification, the court must conclude that Wheeler fully complied with the FMLA's certification requirements as matter of law.

■ In light of Wheeler's clear entitlement to leave, her probationary status was irrelevant. Viewed in the light most favorable to Pioneer, the facts do indicate that Pioneer placed Wheeler on thirty-day probationary status shortly before Wheeler went on FMLA leave. Nevertheless, the facts clearly show that Pioneer discharged Wheeler for taking FMLA leave and for nothing else. The record contains no indication that Wheeler committed any other disciplinary infraction between December 14, 2001, the first day of her FMLA leave, and December 26, 2001, the date of her discharge, that Pioneer could have discharged her for. To hold that an employer who puts an employee on probationary status can avoid the requirements of FMLA, as Pioneer has invited this court to do, would abrogate FMLA.

## VI. *CONCLUSION*

For the foregoing reasons, the material facts of record, viewed in the light most favorable to Pioneer, establish as a matter of law that Pioneer violated Wheeler's rights under the Family and Medical Leave Act. Wheeler's medical condition, her inability to work for five days, her visits to two doctors, and her course of antibiotic medication establish that she had a serious health condition that made her unable to perform the job functions of her employer. Wheeler's conversation with her supervisor on the first day of her leave and the note from her doctor satisfied the notice requirements under the act. Finally, Pioneer's action on December 26, 2001, discharging Wheeler for failure to comply with the request for additional medical information, interfered with Wheeler's rights under the FMLA. Accordingly, Wheeler's motion for partial summary judgment with respect to liability is hereby ALLOWED, and Pioneer's cross-motion for partial summary judgment is hereby DENIED. The clerk will set the case for a status conference to determine further proceedings.

It is So Ordered.